**UNITED STATES**

v.

**Thomas L. KINCHELOE, Seaman Quartermaster, U. S. Coast Guard.**

**CGCM 9951.**
**Docket No. 813.**

U. S. Coast Guard Court of
Military Review.

5 July 1979.

Trial Counsel: LT Kenneth E. Gray, USCGR.

Defense Counsel: LCDR David F. Johnston, USCG.

Appellate Defense Counsel: LT George A. Weller, USCGR.

Appellate Defense Counsel: LT Jon W. Peterson, USCGR.

Appellate Defense Counsel: LT Robert R. Meeks, USCGR.

Appellate Government Counsel: LT Malcolm J. Williams, USCGR.

Appellate Government Counsel: LCDR Thomas W. Snook, USCG.

Appellate Government Counsel: LCDR Larry F. Wheatley, USCG.

## OPINION

MAGUIRE, Judge:

### I

Tried by general court-martial, Appellant was found guilty of a single specification of desertion in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885, and was sentenced to be confined at hard labor for six months, to forfeit $330.00 per month for six months, and to be discharged with a bad conduct discharge. The convening authority approved the proceedings and the sentence, and the case is before this court with five assignments of error. They are:

(1) dismissal should have been ordered on timely motion on grounds of denial of a speedy trial;

(2) pretrial statements made by Appellant were admitted into evidence over objection when they should have been excluded as having been obtained without proper warning;

(3) allowing the prerecorded testimony of a witness to be played before the court and to be made part of the record of trial denied the right of confrontation;

(4) a witness was improperly allowed to testify "from the charge sheet" as to the date of inception of Appellant's absence; and

(5) Appellant was denied a speedy review by the convening authority.

The first and fifth errors, Appellant asserts, require dismissal of the charges. Each of the other three, it is urged, requires setting aside the findings of guilty.

### II

The first assignment of error leads into a thicket of misunderstanding, and requires a looking back at a prior court-martial in which Appellant stood convicted.

In that case, Appellant was sentenced to forfeiture and confinement at hard labor. Immediately upon sentencing Appellant applied for and was granted a deferment of service of the sentence to confinement, under Article 57(d), 10 U.S.C. § 857(d). Prior to the convening authority's action on that record Appellant absented himself, ostensibly without leave. (While that absence was the one underlying the specification of desertion in the instant case, it must be initially assumed, to reach the issue, that the absence was without leave). When the con-

vening authority took initial action on the record, he approved the proceedings and the sentence, and then in separate provisions of the action ordered execution of the forfeiture but continued the deferment of the service of the sentence to confinement. When Appellant was restored to Coast Guard control on 3 October 1976, the convening authority ordered execution of the sentence to confinement. Appellant was then confined until the date the trial in the instant case was begun.

Appellant's contention is that the convening authority had no legal power to continue the deferment of "confinement" when he took his initial action on the record and approved the sentence. If this were the case, the period of confinement adjudged in the sentence, running from the date of his approval, had expired prior to 3 October 1976. As a result, all confinement from that date forward would be chargeable to "pre-trial confinement" for the instant case (save an insignificant few days' delay cause by Appellant himself) and would serve to make operative the rule in *United States v. Burton*, 21 C.M.A. 112, 44 C.M.R. 166 (1971).

### III

The provision for deferment of service of an adjudged confinement was added to the law by the 1968 amendment to the UCMJ. It appears as Article 57(d). At the time, conformative amendments were also made to Articles 57(a) and (b) and 71(d), 10 U.S.C. §§ 857(a, b), 871(d). It can be seen that if it were considered desirable in appropriate cases to allow deferment of service of a confinement sentence specific statutory authority was required in view of the already existing provision in Article 57(b) that a period of adjudged confinement would begin to run on the date it was adjudged.

One brief look at the state of the law on a convening authority's powers before the amendment is in order to prevent later clouding of the issue. Although both the Code and the Manual, during that earlier time, were absolutely silent on the matter of deferment of sentences, it is clear that the power to defer was in a convening authority, except, as noted above, for a sentence to confinement. *United States v. Harmon*, (SPCM NCM 61 01320), 5 October 1961.

In addition, a few statements of the obvious are appropriate for the background of the problem here. Article 71(d) is applicable to the case under consideration. The sentence was such that the convening authority was not inhibited by the (a), (b), or (c) provisions of that Article. He was fully empowered to order execution of the entire sentence as soon as he approved it. Such sentences "may be ordered executed . . . when approved by him." "May be ordered executed" does not mean "must be ordered executed."

As to a deferment of a confinement, Article 57(d) says: "The deferment shall terminate when the sentence is ordered executed." The concept is clear: a deferment cannot exist when an order of execution is issued. The actions are incompatible. But "to approve" is not the same as "to order executed." While, in the ordinary case, an order of execution will normally accompany an approval, the two are legally distinct acts. The occasions on which an order of execution might be inappropriate or undesirable at the time of approval of a sentence may be so few in number that the former silence of the Manual may be understandable, but as the "*Harmon*" decision establishes, when the occasion presents itself, the distinction may be utilized: to approve, but not to order executed.

Another obvious fact is that to order a sentence executed is incompatible with a suspension of execution of that same sentence. If the case is proper for the concept, the legal action is to approve and to suspend execution. The language of the Manual at 88e plainly reflects this principle: "At the time he approves a sentence, the convening authority may suspend . . . the execution of . . . it." (Note that this does not say: "At the time he orders a sentence executed . . . he may suspend . . . .") The language suggested in form 34 (Appendix 14, MCM) reflects

this exactly when the object is to approve a sentence but not to order it executed. In this connection, the language provided in the form 34 just above is saved from contradiction only by the immediacy of the "but . . ." clause excepting execution of the confinement sentence.)

The language of the Manual relied on by Appellant may now be analyzed. The two sentences, at 88f are:

> "The deferment is terminated when the sentence is ordered into execution. The confinement may at this time be suspended but it may not be further deferred."

On its face it says of deferment of confinement that a deferment is terminated by an order of execution. This precisely parallels the statute and is of course legally inevitable. It also states another obvious fact, that if a sentence to confinement is ordered executed, the confinement can no longer be deferred. This creates no problem. A problem does arise because of the reference to "suspension." If a sentence is ordered executed it cannot be, at the same time, that execution of the sentence is suspended. To say, as this language does, that when a "sentence is ordered into execution" by a convening authority "the confinement may at this time be suspended" is not an accurate statement in the context. There is here, then, a definite ambiguity.

The statement would be unambiguous if it read as Appellant apparently reads it. This view has it say that deferment of confinement is terminated by approval of the sentence, but that suspension of execution is still a possibility while further deferment is not. Under this reading, either the Manual is imposing a limitation on the power of the convening authority where the statute does not, or "approval" is synonymous with "ordering execution of," which it plainly is not. (It may be noted here, although the fact is not controlling, that every form provided in Appendix 14 for a case involving confinement deferred when the convening authority has power to order execution on approval provides only for an order of execution. This may be a clue to the thinking of the drafters but it is not decisive because, despite the precedent in the "*Harmon*" case, there is no form for deferral of forfeiture in like instance).

The statute clearly contemplates and allows a deferral after approval of a sentence when the convening authority sees it fit. Looking again to the forms in Appendix 14 we see that continuation of a deferment is provided for only in those cases in which the convening authority is precluded from ordering execution by (a), (b), or (c) of Article 71. But 71(d) itself, specifically by the very amendment which authorized deferment of an adjudged confinement, allows it in all other cases. This subsection applies fully and only to those cases in which the convening authority is empowered to order execution of the sentence "when approved by him." The words "or deferred" were added by the amendment, placed after the words "unless suspended." If the intent were that a convening authority must order execution of a sentence of confinement in such cases as soon as he approved it, the added words would be meaningless.

Since the statute plainly provides the authority to do what was done and since the Manual provision is too ambiguous to serve as a limitation on that authority (assuming that a limitation could be imposed), we hold that the continuing of the deferment by the convening authority in the case considered was a proper act and the confinement of Appellant on 3 October 1976 was a confinement pursuant to the execution of the sentence of a court-martial. Thus, the critical period for invocation of the "*Burton*" rule had not run. The denial of the motion to dismiss predicated on this theory of Appellant was not error.

## IV

The objection to the admission of pretrial statements is based on the fact that investigators, who had reason to believe that a person believed to be Appellant might be found at a particular bar, asked a person who looked like a photograph of Appellant who he was, without having given an "Arti-

cle 31 warning," 10 U.S.C. § 831. Appellant strongly urges warning language in *United States v. Allison*, C.M. 419542 (1969), 40 C.M.R. 602, 604, as indicating that even a simple question as to identity must be prefaced by a warning.

In the *"Allison"* case the questions as to identity were lengthy, covering background and activities, material which had substantive bearing upon the case. Here the question was only as to identity. Once the identity had been established there was no further questioning until after the required warning had been given.

It cannot be law that persons subject to the Code may not ascertain the identity of a potential suspect in a barroom without giving the warning at risk of never being able to question a proved suspect after identification. The consequences would be beyond speculation. Here the complained of question did not go to anything substantive in the way of an offense but was purely innocuous. A primary end of such a question is to isolate an uninvolved person from what would be unreasonable annoyance. Once it was ascertained that the person was the person suspected of an offense the full warning was timely given and all that was discussed thereafter was admissible.

■ In light of the questioning and actions prior to warning already approved in this area of investigation (*United States v. Morris*, 24 U.S.C.M.A. 176, 51 C.M.R. 395 (1976); *United States v. Butler*, C.M. 417674 (1968), 39 C.M.R. 563), we must hold that the mere asking of Appellant who he was, out of a general patronage of a barroom, did not render inadmissible the statements made by him after he had been properly advised of his rights.

## V

■ The objection to the use of the testimony of the Commanding Officer of PA-PAW via a recording made out of the presence of the court cannot be based on a lack of opportunity for Appellant to confront the witness because the testimony was taken in precisely the same style as it would ordinarily have been, with the single exception that the court members were not present. What resulted was, for all purposes, a pre-trial deposition orally taken.

■ Appellant urges that it was not "military necessity" that precluded the appearance of the witness before the court, but mere inconvenience to the Government. Military necessity, to the Coast Guard, is the necessity imposed by its statutory duties upon the activity of its military members. The departure of the witness from the trial vicinity was suddenly precipitated by the order for his vessel to move from its normal base of operations to the Cheseapeake Bay area for emergency ice-breaking operations. This was during the severest winter conditions of recent years when the operational commitments of the service and the public welfare made imperative the opening or keeping open of sea-lanes for transportation of goods or supplies. The witness was the commanding officer of the vessel. This alone, despite the accidental marks that he was the most experienced officer, both generally and as to the particular vessel, assigned aboard, and that another experienced officer was already unavoidably absent from the vessel, rendered his presence on board for the movement and the operation necessary.

Appellant speculates that there would have been occasions during the expected ice season in the Chesapeake Bay when the vessel would have been moored, thus allowing in the future a temporary detachment of the witness for the purpose of traveling to Charleston for appearance before the court. This not only demands too much speculation to be persuasive as of the time of the trial but entirely misconceives the function of command, the responsibilities and duties of the commanding officer, and the critical situation which it was the service's duty to cope with.

At the time the military judge made his decision to admit the recorded session at which the witness had testified under oath, subject to full cross-examination, there was no reasonable expectation of his availability to appear in person before the court and the

absence of the witness was due to a military necessity of the Coast Guard. The decision was not erroneous.

## VI

■ On witness, questioned as to his knowledge of the alleged date of commencement of Appellant's alleged unauthorized absence, testified from his recollection that it was in January, 1974, but that he could not recall the date. The witness did, however, look at the charge sheet and then stated that it reflected that "15 January" was the date.

Defense counsel objected. The military judge announced that the charge sheet "can't prove anything" and directed the trial counsel to attempt a proper foundation for evidence of the commencement of absence.

Appellant complains now that the military judge failed to give a formal instruction to the court that the reference of this particular witness to "15 January" should be disregarded.

The instantaneous reaction of the military judge, almost a reproof to the trial counsel, was probably a more effective guide to the court members than any formal instruction at a later time would have been. At any rate, no formal instruction was asked for at the trial and there was other probative evidence of the precise date independent of the recollection of that witness. There was no error here.

## VII

Appellant's complaint as to delay in review of his conviction seeks to extend the rule in *Dunlap v. Convening Authority*, 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974), to a case in which, although initial review was not completed within 90 days of the end of the trial, the accused was in confinement after trial for a period of less than 90 days.

The rule has not been so extended. *United States v. Ledbetter*, 25 U.S.C.M.A. 51, 54 C.M.R. (1976); *United States v. Burns*, 25 U.S.C.M.A. 170, 54 C.M.R. (1976). Nothing in *United States v. Ward*, C.G.C.M.S. 22759 (1974), 48 C.M.R. 588; or *United States v. Player*, 2 M.J. 1115 (C.G.C.M.R.1975), cited by Appellant, tends to persuade that a separate rule is appropriate for the Coast Guard.

In light of the foregoing, the findings and sentence as approved on review below are affirmed.

Judges BURGESS and ALCANTARA concur.