UNITED STATES, Appellee,

v.

Thomas L. KINCHELOE, Seaman
Quartermaster U. S. Coast
Guard, Appellant.

No. 37,772.

CGCM 9951.

U. S. Court of Military Appeals.

Aug. 30, 1982.

more than two years and eight months. *See* Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeiture of $330.00 pay per month for 6 months. After Kincheloe's conviction was upheld by all intermediate reviewing authorities, we granted review of these two issues:

I

WHETHER THE COURT OF MILITARY REVIEW ERRED IN ACCEPTING AS PROOF OF SERVICE A CERTIFICATE BY THE STAFF LEGAL OFFICER THAT HE SERVED A COPY OF THE POST–TRIAL REVIEW AND ADVICE ON DEFENSE COUNSEL BY MAILING.

II

WHETHER FAILURE OF AN APPELLATE JUDGE TO DISCLOSE HIS PARTICIPATION AS TRIAL COUNSEL IN PRIOR COURT–MARTIAL OF ACCUSED DEPRIVED ACCUSED OF FAIR AND IMPARTIAL REVIEW.

---

For Appellant: *Lieutenant Robert R. Meeks*, USCGR (argued).

For Appellee: *Lieutenant Commander Robert W. Ferguson*, USCG (argued); *Lieutenant Commander Larry F. Wheatley*, USCG.

### Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried by a general court-martial with members on January 18–21, 1977, at the Office of the Commander, Seventh Coast Guard District, Miami, Florida, and was convicted of desertion terminated by his apprehension after an absence of

I

### *Service of the Review*

The trial concluded on January 21, 1977, and the record was authenticated by the military judge on April 15 and examined by the defense counsel on April 26. On the same date the defense counsel submitted an extensive Article 38(c) brief,[1] appellant's request for early release from confinement, and his request for appellate counsel; and he called attention to a petition for clemency executed by defense counsel, trial counsel, and four of the five court members.[2] On May 13, 1977, trial counsel filed a detailed reply to the post-trial brief. The post-trial review was completed on June 6,

---

1. Uniform Code of Military Justice, 10 U.S.C. § 838(c).

2. The petition for clemency took the position that, since a number of persons had evaded military service during the Vietnam War but

nonetheless had received amnesty, appellant—who had served well for several years before his unauthorized absences—should not receive a bad-conduct discharge.

1977, by the Legal Officer of the Seventh Coast Guard District. At the end of the review, he affixed and signed this certificate of service:

I certify that a copy of the Legal Officer's review and advice to the Convening Authority in the case of *U. S. v. SNQM KINCHELOE* was served on Defense Counsel by mailing on 6 June 1977.

However, on June 20, 1977—after two weeks had gone by and trial defense counsel had not responded to the review in any fashion—the convening authority took final action in the case by approving appellant's sentence.

Thereafter, on August 1, 1977, Lieutenant Weller was assigned to the case as the first appellate defense counsel and on September 12, 1977, he submitted five assignments of error to the Coast Guard Court of Military Review. None of these errors, however, involve any claim that the post-trial review had not been properly served on the trial defense counsel in accordance with the *Goode* rule.[3] When Lieutenant Peterson was substituted as the new appellate defense counsel on May 12, 1978, he, too, did not make any claim concerning defective service of the post-trial review on the trial defense counsel. A third appellate defense counsel—Lieutenant Meeks—finally replaced Lieutenant Peterson on March 9, 1979,[4] and, initially, he also made no such claim. Only after the Coast Guard Court of Military Review affirmed appellant's conviction on July 5, 1979,[5] did he move, pursuant to Rule 19.*b* of the Rules of Practice and Procedure of the Courts of Military Review, that its decision be reconsidered on the ground that he had "noted the *possibility* of defective service of the post-trial review

and advice." (Emphasis added). He explained that he discussed the matter with trial defense counsel on July 9, 1979, and learned that the post-trial review did not come "into ... [his] hands" until "sometime after 22 June 1977." In connection with this "new evidence," the following affidavit of trial defense counsel, dated July 10, 1979, was attached to the motion for reconsideration:

I, LCDR David F. JOHNSTON, USCG, Trial Defense Counsel in the General Courts-Martial of SNQM Thomas L. KINCHELOE, USCG held 18 through 21 January 1977, was detached from U. S. Coast Guard Reserve Training Center Yorktown, Virginia pursuant to Permanent Change of Station Orders on 24 May 1977. I reported for duty at the office of Commander, Fifth Coast Guard District pursuant to the same orders on 22 June 1977. During the interim I was traveling from Saturday, 28 May 1977 until Sunday, 19 June 1977. From 19 June 1977 until reporting for duty on 22 June 1977 I was living at a temporary address.

I have no recollection of the actual date when a copy of the staff legal officer's post trial review and advice was made available to me. However, it was mailed to me "C/O Commander, Fifth Coast Guard District (d1)." I am certain that it did not reach me prior to 22 June 1977.

Therefore, Lieutenant Meeks claimed that "no opportunity was provided to the accused or his trial defense counsel to comment upon the post-trial review and advice prior to the action of the convening authority on 20 June 1977." On July 18, 1979, after the Government's Reply had been filed, the Coast Guard Court of Military

---

**3.** That rule requires

that on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. § 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings.

The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review. *United States v. Goode*, 1 M.J. 3, 6 (C.M.A. 1975) (footnote omitted).

**4.** Lieutenant Meeks has not been replaced and still represents appellant on this appeal.

**5.** *See United States v. Kincheloe*, 7 M.J. 873 (C.G.C.M.R.1979).

Review summarily denied the motion for reconsideration.

▮▮ Appellant's basic contention is that he was prejudiced by failure of the legal officer and the convening authority to allow his trial defense counsel an adequate opportunity to reply to the post-trial review, as prescribed by *United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975). Of course, *Goode* did not mandate a particular form of service but only required that "[p]roof of . . . service . . . be made a part of the record of proceedings." *See also United States v. Hill*, 3 M.J. 295, 296 (C.M.A.1977). Certainly service by mail—which was employed by the legal officer in the case at bar and which is authorized for the service of papers in criminal and civil actions in the Federal courts, *see* Fed.R.Crim.P. 49(b); Fed.R.Civ.P. 5(b)—is a permissible way to serve a post-trial review.[6] Furthermore, just as in the civil courts, a certificate of service by mail which has been signed by counsel is a familiar and adequate means of evidencing that service has been made. Accordingly, the certificate of service signed by the legal officer constituted adequate proof of service for purposes of meeting the *Goode* requirements.

▮▮ Of course, a certificate of service by mail is not conclusive that the letter to which it refers was mailed or was received—and even less does it establish when the letter was received. Therefore, although, as in the case at bar, it would appear from the record that the interval between the mailing of the post-trial review and the action of the convening authority had been great enough to assure that defense counsel had ample time to prepare his *Goode* response, this may prove not to be true. In that event, the convening authority has no power to reconsider his original action, if that action has been published.

*United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). Even so, if trial defense counsel believes that his client has been prejudiced in some way by the post-trial review, he must not sit idle. Instead, he should bring the situation to the attention of appellate defense counsel, who may, in turn, move to file with the Court of Military Review suitable documents explaining why the *Goode* response was not filed in a timely manner. Once aware of the reason for the failure of defense counsel to file a *Goode* response, the Court of Military Review, unlike the convening authority, is empowered to take remedial action if it finds that to be appropriate, and at least the Court will not infer erroneously that defense counsel filed no *Goode* response because he believed the post-trial review to be accurate.

▮▮ Instead of promptly complaining that he had received no opportunity to respond to the post-trial review, defense counsel in this case did nothing at all until more than two years later, when he submitted an affidavit at the request of appellate defense counsel. Thus, not until it had acted on appellant's case was the Court of Military Review informed of the defense claim that no opportunity had been given for a *Goode* response. At some point trial defense counsel was certainly on notice that a post-trial review had been prepared and that the convening authority had acted without receiving any response to the review. Under such circumstances, the lengthy delay waives any objection to defects in service of the post-trial review, so appellant is entitled to no relief—even if we assume that the legal officer should have foreseen that defense counsel would not have received the review before the convening authority acted.[7]

---

6. However, in calculating the time available for filing the *Goode* response, additional time should be allowed when service is made by mail. *Cf.* Fed.R.Civ.P. 6(e).

7. Such an assumption is rather extreme in that it places on the legal officer the obligation to know how long the defense counsel will take while enroute from one assignment to another.

Although the legal officer might have tracked defense counsel down by telephone, it would appear that defense counsel should bear the responsibility of advising the legal officer as to any unusual circumstances that might delay his receipt of the post-trial review through the mails, rather than that the legal officer should have a duty to inquire as to the whereabouts of counsel.

Furthermore, even now we do not know whether defense counsel who represented Kincheloe at trial would have submitted a *Goode* response if he had been allowed an unlimited time to do so. His affidavit does not claim that he would have done so and his failure to take any action after the convening authority acted would suggest that he really had no complaint about the review. Quite possibly he thought that, by submitting the extensive Article 38(c) brief, he already had raised all the points he wished to bring specifically to the attention of the convening authority.

■ Moreover, appellant clearly was not prejudiced even if his trial defense counsel lacked the opportunity to submit a response to the post-trial review. All of the matters contained in the review which appellate defense counsel now claims to have been prejudicial were either relatively unimportant or could not have had any significant impact on the convening authority's decision to approve the findings and sentence. First, the appellant claims he was prejudiced because there were "constant references throughout to Special Court-Martial when in fact it was a General Court-Martial." Even so, this error could only have been beneficial to appellant, since a special court-martial is not so serious as a general court-martial. Second, appellant complains that the review stated "that 2 and ½ months of confinement had been approved in" connection with an earlier conviction by special "court-martial when in fact only 2 months had been approved" by the convening authority. However, this minor misstatement only involved a matter which had nothing to do with the merits of appellant's trial. In any event, page 2 of prosecution exhibit 7, which contains the entire action of the convening authority in the first court-martial, accurately reflects that on February 6, 1974, he reduced appellant's confinement to 2 months. Therefore, this negligible error could not have harmed appellant.

Appellant's third claim of prejudice—that the review incorrectly stated "that a witness had indicated his memory was refreshed when in fact the witness had testified to the contrary"—also involved a trifling error. However, this witness—Commander Lovern, who was the commanding officer of appellant's ship and the accuser in the desertion case—testified that, even though he did not remember swearing to the specific charges since this had occurred three years before, he recognized his signature on the charge sheet which "indicates that I swore to the charges." [8] He further testified that "I understand that the person who signs . . . [the charge sheet] must have personal knowledge of the charge or must have investigated it and that such charges must be sworn."

Although the legal officer misstated in his review that "[a]fter viewing his Charge Sheet on KINCHELOE *and indicating his memory was refreshed,* . . . [Commander Lovern] testified that the defendant absented himself on 15 January 1974," (emphasis added), this inaccuracy also was not prejudicial to appellant, since the review correctly summarized the testimony of two other witnesses (Niziankowicz and Kowaleski) who independently established that appellant's unauthorized absence from the Coast Guard began in January 1974. Moreover, the review accurately described prosecution exhibit 8 as a "Pers[onnel] Action Sheet showing KINCHELOE failing to return from authorized liberty at 0730, 15 Jan. 74" and prosecution exhibit 2 as "an affidavit by KINCHELOE," wherein he admitted that "[o]n January 15, 1974, I left the USCGC PAPAW for Baltimore, Md." Therefore, even if Commander Lovern had not refreshed his memory from the charge sheet as to the date on which appellant's desertion began, other testimony and documents which were correctly summarized in the review demonstrated unerringly that the period of desertion did, in fact, commence on January 15, 1974.

---

8. The time of swearing to the charges was related to appellant's claim that the statute of

limitations had run. *See* Article 43, UCMJ, 10 U.S.C. § 843.

Appellant also complains that the review improperly contains "allegations that . . . [he] was AWOL at the time of the review." Of course, the convening authority probably had known that appellant was absent even before he received the post-trial review, for he had authorized appellant's early release from confinement and Kincheloe had not reported to the Coast Guard Yard as directed. Furthermore, Kincheloe had been convicted of two unauthorized absences in 1973 —of 1 month and of 3½ months—and his desertion lasted over 2½ years before its termination by apprehension. Therefore, he had an infinitesimal chance of receiving favorable action from the convening authority, even if he had remained present after trial.

Finally, we reiterate that, before the convening authority took final action in this case, trial defense counsel had submitted to him a thorough and well-researched Article 38(c) brief, which discussed errors that allegedly had occurred during appellant's court-martial. While such a brief is not a substitute for defense rebuttal to a post-trial review, its presentation to the convening authority further minimized any chance of prejudice in this case. Accordingly, there is no merit to this issue.

## II

### Disqualification of Appellate Judge

Pursuant to his pleas, on October 11, 1973, a special court-martial convicted appellant of two unauthorized absences and he was thereupon sentenced to be confined at hard labor for 2½ months, to forfeit $285.00 per month for 2 months, and to perform hard labor without confinement for 45 days. On the same day of the trial, appellant's sentence to confinement was deferred by the convening authority. Before the convening authority acted finally in reviewing the case, appellant again absented himself without authority on January 15, 1974—which was the basis for his conviction of desertion in the case at bar. Then, on February 6, 1974, the convening authority took this action:

only so much of the sentence as provides for confinement at hard labor for two months, forfeiture of $120 per month for one month and performance of hard labor without confinement for 45 days is approved. The sentence of $120 per month forfeiture for one month will be duly executed. The sentence of hard labor without confinement for 45 days is hereby deferred until Seaman Quartermaster KINCHELOE is returned to military control. The service of the sentence to confinement at hard labor for two and one half months was deferred on 11 October 1973 and the deferment will remain in effect until Seaman Quartermaster KINCHELOE is returned to military control.

On October 3, 1976, appellant was apprehended in Baltimore by Coast Guard Investigators and delivered the next day to the commanding officer of the USCGC PAPAW who ordered execution of the special court-martial sentence to confinement. Then, on November 23, 1976, the Commanding Officer ordered him held in "pre-trial confinement" for the current desertion offense where he remained until trial began on January 18, 1977.

When appellant was brought to trial, he moved to dismiss the charge because of excessive pretrial confinement. Although he had been confined almost 110 days while awaiting trial, the Government claimed that almost half of this period was attributable to the previously adjudged special court-martial sentence. In turn, a question arose as to whether the convening authority's purported deferment of confinement on October 11, 1973, had been valid. In this connection appellant contended that, absent a request from him, the deferment was improper, so the earlier sentence to confinement had been completed prior to his apprehension and confinement while awaiting his trial by general court-martial.

In preparation for trial in the case at bar, defense counsel requested trial counsel to produce a copy of the record of the earlier special court-martial. After examining that record, defense counsel contended that, since it did not reflect that appellant had

requested deferment of his confinement, the deferment granted on October 11, 1973, had been invalid; so the earlier sentence to confinement had run before Kincheloe's apprehension.

Lieutenant Gray, trial counsel of the general court-martial, then sought to locate a copy of the request for deferment; in so doing, he contacted Commander Burgess, who had been trial counsel of the special court-martial which previously convicted appellant of the unauthorized absences. Thereupon, as Lieutenant Gray informed the military judge at an Article 39(a), 10 U.S.C. § 839(a) session, Burgess supplied from his personal files a copy of a letter dated October 11, 1973, which requested deferment of confinement and purportedly had been written to the convening authority of the special court-martial by Lieutenant Commander Johnston—who had been appellant's counsel in the earlier trial and was representing him in the case at bar. Also, Burgess furnished Lieutenant Gray a copy of a letter of the same date to Lieutenant Commander Johnston from Commander Lovern, the convening authority of the special court-martial, wherein the request was granted pending Lovern's review of the record. The two letters were marked as appellate exhibits, but since neither had been signed, the military judge ruled that they were not admissible without further authentication. The judge also stated that he would not allow Lieutenant Gray to call either appellant or his counsel, Lieutenant Commander Johnston, as a witness to authenticate the documents.

Lieutenant Gray then suggested that he would need a delay to search for a signed copy of the request for deferment—whereupon the judge suggested that "counsel . . . get together and try to resolve this without having to seek a delay of a week in order to try and find the original from the records center, assuming that there is an original." Lieutenant Commander Johnston, the defense counsel, invited the judge to consider

whether, even if the letter requesting deferment was authentic, there were other reasons for holding that Kincheloe was entitled to dismissal of the charges. After expressing initial reluctance to proceed on this basis without establishing that a request for deferment of confinement had been made by appellant on October 11, 1973, the judge finally acquiesced. Thereupon, the parties presented their conflicting contentions on other issues concerning the pretrial confinement. Subsequently, they entered into a stipulation stating that "[t]he . . . unsigned request for deferment and convening authority action thereon are true copies of the original located in the file of the CGC PA-PAW. Neither the original nor a copy was attached to the original record of trial." Later, in his argument, defense counsel conceded "that there is evidence that at some point there was a request for deferral submitted, the Convening Authority acted on that." However, because it was not attached to the record of trial, defense counsel continued to claim that the request was irregular and not fully effective, but this argument was rejected by the trial judge.

When appellant's case reached the Coast Guard Court of Military Review, appellate defense counsel successfully moved to disqualify Commander Lynch, who was one of the appellate judges of that court but who also had been the judge at Kincheloe's trial. However, no motion was made to disqualify Commander Burgess, who also was serving as an appellate judge.[9] Along with Judge Alcantara, he concurred outright in the decision written by Judge McGuire in appellant's case. See United States v. Kincheloe, 7 M.J. 873, 878 (C.G.C.M.R.1979). One of the errors presented to the court was whether the desertion charge should have been dismissed because appellant had been confined more than ninety days prior to trial. See United States v. Burton, 21 U.S. C.M.A. 112, 44 C.M.R. 166 (1971). At this time, appellate defense counsel contended

---

**9.** The Coast Guard Court of Military Review consists of a civilian who is chief judge and four members who are Coast Guard officers. Typically, the Court sits en banc, rather than in panels. Commander Burgess was assigned to the Coast Guard Court of Military Review on October 13, 1976.

that the convening authority had not been empowered to continue deferment of confinement[10] when, on February 6, 1974, he took his final action approving the findings and sentence in Kincheloe's trial by special court-martial; and so

> [t]he confinement portion of the sentence ran when the convening authority approved it and ordered the forfeitures portion of the sentence executed by operation of law. This is because the confinement portion of the sentence begins to run on the date it's adjudged regardless of whether the defendant serves any time in the brig except for periods of deferral or suspension.

The Government, of course, still insisted that part of the "pretrial confinement" was being served by appellant pursuant to his sentence by the special court-martial, wherein Commander Burgess had acted as trial counsel.

In resolving the speedy trial issue, the Court of Military Review observed that it "require[d] a looking back at . . . [the] prior [special] court-martial in which Appellant stood convicted." *Id.* at 874. Analyzing the pertinent law, the Court concluded

> that the continuing of the deferment by the convening authority in the case considered was a proper act and the confinement of Appellant on 3 October 1976 was a confinement pursuant to the execution of the sentence of a court-martial. Thus, the critical period for invocation of the *"Burton"* rule had not run. The denial of the motion to dismiss predicated on this theory of Appellant was not error.

*Id.* at 876.

Before us, appellant claims that failure of Judge Burgess

> to advise the Appellate Defense Counsel of his prior prosecution of the Appellant along with his participation in the determination of the related factual issues in

this case, renders the decision by the Coast Guard Court of Military Review so fundamentally unfair that this Court should not hesitate to redress the wrong using the due process clause.

Also, he asserted:

> There is no way to know what effect the appellate judge's relationship with the convening authority in the previous case and the facts and circumstances of that case before and after the trial as trial counsel may have created a conscious or subconscious bias against the Appellant. However, a reasonable person could easily conclude that a bias might exist in such circumstances and it has clearly produced a cloud over the appellate review.

Accordingly, appellant contends that his desertion conviction should be reversed and the charge dismissed.

The assigned issue which we granted is misleading, for it speaks of "failure of an appellate judge to disclose his participation as trial counsel in prior court-martial of accused." However, the record of trial makes perfectly clear what Commander Burgess' role had been at the earlier trial by special court-martial; and so there was really nothing left for him to disclose. This is especially true since the number of lawyers in the Coast Guard is relatively small and we have no doubt that the appellate defense counsel who practiced before the Court of Military Review were well aware that the Commander Burgess to whom the record refers in connection with the two unsigned documents was the same Commander Burgess who was sitting on the Court of Military Review. Thus, the basic issue is not one of nondisclosure to counsel, for they already were apprised by the record of the appellate judge's earlier role. Instead, the issue is whether the facts revealed in this record demonstrate that Com-

---

**10.** As the Court of Military Review observed:
> If this were the case, the period of confinement adjudged in the sentence, running from the date of his approval, had expired prior to 3 October 1976. As a result, all confinement from that date forward would be chargeable to "pre-trial confinement" for the instant

> case (save an insignificant few days' delay cause[d] by Appellant himself) and would serve to make operative the rule in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

*United States v. Kincheloe, supra* at 875.

mander Burgess should not have participated in the appellate review.

■ Article 66(h), UCMJ, 10 U.S.C. § 866(h), provides: [11]

No member of a Court of Military Review shall be eligible to review the record of any trial if such member served as investigating officer in the case [pending review] or served as a member of the court-martial before which such trial was conducted, or served as military judge, trial or defense counsel, or reviewing officer of such trial.

Cf. Articles 6(c) and 27(a), Uniform Code, 10 U.S.C. §§ 806(c) and 827(a), respectively. However, as we observed long ago, neither the Uniform Code of Military Justice nor the Manual for Courts-Martial, expressly "provides for disqualification of a board of review member" [now a judge on a court of military review] because of "bias or prejudice or for untoward appearance." *United States v. Hurt*, 9 U.S.C.M.A. 735, 753, 27 C.M.R. 3, 21 (1958); *see also United States v. Crider*, 21 U.S.C.M.A. 193, 196, 44 C.M.R. 247, 250 (1972). Thus, it might be argued that by implication Article 66 excluded any other grounds for disqualification.

We doubt that Congress intended this negative implication. It is axiomatic that *no* judge can participate in the adjudication of a case if he is not "a neutral and detached judge." *Ward v. Village of Monroeville*, 409 U.S. 57, 62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267, 272 (1972); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). Inherent in any judge's role are the requirements of impartiality and basic fairness to the parties. Moreover, military justice is firmly committed to this proposition:

11. Similarly, 28 U.S.C. § 47 directs that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him." This basis for disqualification was relied on by appellate defense counsel in moving successfully that Judge Lynch, who had been the trial judge, not participate in the appellate review of Kincheloe's case.

12. 28 U.S.C. § 144, which applies to District Courts, provides for the filing by any party of an affidavit concerning "personal bias or prejudice" of a judge. If the affidavit is sufficient, the judge must recuse himself. *Berger v. Unit-*

· [T]he court's actions and deliberations must not only be untainted, but must also avoid the very appearance of impurity. *Cf. United States v. Johnson*, 318 US 189, 87 LEd 704, 63 SCt 549; *United States v. Atkinson*, 297 US 157, 80 LEd 555, 56 SCt 391; *Ryan v. United States*, . . . [191 F2d 779 (CA DC Cir)].

*United States v. Walters*, 4 U.S.C.M.A. 617, 630, 16 C.M.R. 191, 204 (1954). Therefore, despite the absence of any specific provision to this effect in the Code or the Manual, any relationship of a judge of the Court of Military Review which casts suspicion upon his fairness or impartiality provides a basis to seek his disqualification. *United States v. Crider, supra* at 196, 44 C.M.R. at 250; *United States v. Hurt, supra* at 753, 27 C.M.R. at 21.

The Federal statute which concerns disqualification of judges (28 U.S.C. § 455) provides some guidance as to the circumstances which should preclude an appellate judge from participation in review of a case. It includes these provisions: [12]

§ 455. Disqualification of justice, judge, magistrate, or referee in bankruptcy

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

\* \* \* \* \* \*

ed States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921) (prejudice against German Americans). The quoted language was incorporated in Canon 3 C when the American Bar Association adopted its Code of Judicial Conduct in 1972; in turn, the same language was used in 1974 Amendments to 28 U.S.C. § 455. *See United States v. Olander*, 584 F.2d 876, 882 (9th Cir. 1978), *vacated on other grounds*, 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979). Therefore, "decisions interpreting ["personal bias or prejudice"] in § 144 are controlling in the interpretation of § 455(b)(1)." *Id.*

**49**

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

If 28 U.S.C. § 455 were applicable to courts of military review, it would not have compelled disqualification of Commander Burgess. With respect to "personal bias or prejudice," § 455(b)(1), we conclude that Burgess' service as trial counsel six years before, in a trial for two unauthorized absences to which Kincheloe pleaded guilty, gives no reason to infer the existence of a prohibited state of mind almost six years later, when Commander Burgess reviewed the record of trial as an appellate judge. In various cases a trial judge has been allowed to sit in a criminal case even though he previously prosecuted the defendant for other crimes. *See, e.g., Corbett v. Bordenkircher*, 615 F.2d 722 (6th Cir. 1980), *cert. denied*, 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed.2d 66 (1980); *Jenkins v. Bordenkircher*, 611 F.2d 162 (6th Cir. 1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 798 (1980); *Murphy v. Beto*, 416 F.2d 98 (5th Cir. 1969); *Goodspeed v. Beto*, 341 F.2d 908 (5th Cir. 1965), *cert. denied*, 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798 (1967). With respect to 28 U.S.C. § 455, it has been observed:

> Though the duty to vacate the bench is absolute in a situation where the judge was a United States attorney at the time when the case before him began, *United States v. Amerine*, 411 F.2d 1130 (6th Cir. 1969), this rule applies only when the case before him is the same as or is related to the case which was within his jurisdiction as prosecuting attorney. It has been specifically held that a judge who as United

States Attorney was "of counsel" when a defendant was tried and convicted of one charge is not disqualified from presiding at the prosecution of the same defendant for a totally unrelated offense. *Gravenmier v. United States*, 469 F.2d 66 (9th Cir. 1972).[13]

*Jenkins v. Bordenkircher, supra* at 166.

28 U.S.C. § 455(b)(3) would have been contravened only if Commander Burgess had "served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." Apart from the formal opinion of the court below, in which he concurred, we are unaware of any opinion expressed by Commander Burgess concerning the merits of Kincheloe's trial for desertion. Moreover, in the desertion "proceeding," *see* § 455(d)(1), Commander Burgess never participated as "counsel" or "adviser." Even though the two unsigned letters—which later became appellate exhibits during the trial—came from his personal file, he was never called to authenticate them or to testify that a request for deferment of confinement had ever been made by appellant or his counsel. In our view, his delivery of the two letters to Lieutenant Gray, without being required to offer any testimony as to their authenticity, simply did not suffice to make Burgess a "witness." *Cf. Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39, 55 (1976).

While serving as trial counsel in the special court-martial which convicted appellant of the unauthorized absences, Commander Burgess may have obtained "personal knowledge" whether appellant, immediately after trial, had requested deferment of his sentence to confinement. *See* 28 U.S.C.

**13.** In the case at bar the prior trial had some relation to the disposition of the speedy trial motion in the case at hand. However, we do not believe this requires a different result. In *Corbett v. Bordenkircher*, 615 F.2d 722 (6th Cir. 1980), *cert. denied*, 449 U.S. 853, 101 S.Ct. 146, 66 L.Ed.2d 66 (1980), the defendant was being tried as a habitual offender in a state court and previously as a prosecutor the judge had prosecuted him on four occasions; one of these prosecutions had resulted in a conviction which was being relied on in charging the defendant as a habitual offender. Nonetheless, in the absence of some allegation that the judge actually demonstrated prejudice against the defendant, the judge was not disqualified to try the accused.

§ 455(b)(1). However, it is equally possible that Burgess lacked such knowledge. Furthermore, as we read the record, the existence of appellant's original request for deferment ceased to be "disputed" even before the end of the trial; and, so far as we can determine from our review of the pleadings filed with the Court of Military Review, it certainly was not a "disputed evidentiary" fact at that stage. Indeed, a formal stipulation had resolved any dispute.

■ We are left then with the Section 455(a) provision for disqualification of a judge whose "impartiality might reasonably be questioned." This standard is objective. *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *Parrish v. Board of Commissioners of Alabama State Bar*, 524 F.2d 98, 103 (5th Cir. 1975) (en banc), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *see also* H.R. Rep.No.1453, 93rd Cong., 2d Sess. (1974), reprinted in [1974] U.S.Code Cong. & Ad. News 6351, 6355. It was taken by Congress from the Code of Judicial Conduct prescribed by the American Bar Association. *See* Canon 3 C(1). As explained by the Reporter for the Committee that originally drafted the Canon,

> [a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification.

E. Thode, *Reporter's Notes to Code of Judicial Conduct* 60 (1973). Thus, the test is

whether a reasonable person who knew all the facts would question Commander Burgess' impartiality. *United States v. Mirkin*, 649 F.2d 78, 82 (1st Cir. 1981); *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978); *United States v. Cowden, supra* at 265. Moreover, as additional guidance in determining whether a judge's impartiality has been so impugned as to require his recusal under § 455(a), *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979), states: "A trial judge must hear cases unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some kind of probative evidence." [14] Therefore, an allegation of partiality must be supported by facts or "some kind of probative evidence" which would warrant a reasonable inference of lack of impartiality on the judge's part. Mere suspicion or conjecture will not suffice.

■ Applying this objective standard, we conclude that Commander Burgess was not subject to disqualification. We do not believe that a reasonable person would question his impartiality because Burgess had prosecuted appellant six years before in a special court-martial. In *United States v. Hurt, supra* at 754, 27 C.M.R. at 22, we observed:

> There is . . . nothing untoward in Colonel Lee's assignment to the board of review for this case and his performance of duties as Government counsel in other and altogether different cases. As a board of review member he did not review any of his own actions.

---

14. Of course, "[a] . . . judge has as much obligation not to . . . [disqualify] himself when there is no reason to do so as he does to . . . [disqualify] himself when the converse is true." *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976); *United States v. Ming*, 466 F.2d 1000 (7th Cir. 1972), *cert. denied*, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972); *United States v. Diorio*, 451 F.2d 21 (2nd Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1173, 31 L.Ed.2d 232 (1972); *Smith v. Danyo*, 441 F.Supp. 171, 175 (M.D.Pa.1977), *aff'd*, 585 F.2d 83 (3d Cir. 1978). In enacting 28 U.S.C. § 455(a), Congress warned judges not to apply the statute too cavalierly:

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be

alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

H.R.Rep.No.1453, 93rd Cong., 2d Sess. (1974), reprinted in [1974] U.S.Code Cong. & Ad.News 6351, 6355.

Likewise, here Burgess is not subject to any adverse inference of partiality or bias that might arise if in some way he were reviewing his own action. Although the convening authority took action to defer execution of the confinement imposed by the special court-martial and later approved the sentence which that court-martial had adjudged, Commander Burgess, as trial counsel, neither took, nor had power to take, such action. *See* Articles 60, 64 and 71, UCMJ, 10 U.S.C. §§ 860, 864 and 871, respectively. There was no requirement that the convening authority obtain his advice on either the deferment of confinement or the approval of sentence. *Cf.* Article 61, UCMJ, 10 U.S.C. § 861.

With respect to the two letters that were supplied from Commander Burgess' personal file, we also find nothing disquieting. He had not prepared either document; he was not called as a witness to testify that the original of either document had been signed; and the record does not demonstrate that he could have given such testimony even if he had been called. In view of the stipulation of the parties—it is clear that the existence of the request for deferment had ceased to be disputed by the defense. Thus, no reasonable person would believe that Burgess' earlier knowledge of such a request—if he had such knowledge—would have influenced his decision in the appellate review of Kincheloe's desertion conviction.

Finally, the very fact that appellate defense counsel—who already had moved to disqualify another member of the court and had been placed on notice of Commander Burgess' role by the record of trial in the case at bar—did not question at the time his participation in the appellate review indicates that appellant and his counsel did not believe Burgess' impartiality had been affected in any way. While a disqualification of an appellate judge may not be subject to waiver,[15] the apparent absence of any belief even on the part of appellate defense counsel that Burgess was biased or

prejudiced corroborates our conclusion that reasonable persons would find no ground to question the participation of Burgess in the appellate review.

### III

Accordingly, we affirm the decision of the United States Coast Guard Court of Military Review.

Judge FLETCHER concurs.

COOK, Judge (concurring in part and dissenting in part):

### I

The review of the Legal Officer contains the following notation:

> I certify that a copy of the Legal Officer's review and advice to the Convening Authority in the case of *U. S. v. SNQM KINCHELOE* was served on Defense Counsel by mailing on 6 June 1977.

Action was taken by the convening authority on June 20, 1977. By affidavit dated July 10, 1979, defense counsel stated that he was in travel status to a new assignment from May 28, 1977, to June 19, 1977, and that he was "certain that ... [the review] did not reach me prior to 22 June 1977."

The review was apparently sent by certified mail to defense counsel's new duty station and presumably was received by him shortly after he reported for duty. However, the first indication of any failure of service did not appear until *July 10, 1979*, when appellate defense counsel filed a motion for reconsideration of the decision of the Court of Military Review. The decisive question is why defense counsel waited two years before complaining about the failure of timely service of the review.

In *United States v. Hill*, 3 M.J. 295, 296 (C.M.A.1977), we held that a notation on the review, "Copy to: ... Defense Counsel," was not sufficient proof of service to com-

---

**15.** Under 28 U.S.C. § 455(e) the disqualification under § 455(a)—a proceeding in which the judge's "impartiality might reasonably be ques-

tioned"—may be waived with "full disclosure on the record"; but the disqualifications contained in 455(b) are not subject to waiver.

ply with the mandate of *United States v. Goode*, 1 M.J. 3 (C.M.A.1975). Here there was a certificate of service by mail which, on its face, purports regularity.[1] There was no reason either for the staff legal officer to suspect any irregularity or for the Court of Military Review to go behind such a certification to make further inquiries as to whether such service, in fact, occurred.

If the *Goode* rule is to have its desired effect, some participation of the defense counsel is essential. The rule is one "of judicial convenience . . . [which] should not be utilized to impose onerous burdens upon the Government." *United States v. Iverson*, 5 M.J. 440, 447 (C.M.A.1978) (Cook, J., concurring in the result). It was not "intended" to "become a trap for the Government nor . . . [to permit] defense counsel . . . [to] do nothing and later claim some inadequacy in the good-faith attempt by the Government to effect service of the review." *United States v. Babcock*, Dkt. No. 40,148 (Cook, J., concurring). While I would not apply the *Goode* waiver since the facts do not show actual receipt, I believe that waiting two years to raise the issue of untimely service amounts to a form of laches by defense counsel which relieves the Government from responsibility for failure to accomplish timely service. In this regard, I also note that even now defense counsel has not submitted corrections, comments or challenges to the review. The orderly processing of cases cannot be halted in this manner; defense counsel simply waited too long.

## II

While I agree with the majority that we must look outside of the Uniform Code of Military Justice[2] for guidance in resolving the issue of the disqualification of Commander Burgess, a judge of the Coast Guard Court of Military Review, I do not agree with their application of that law. I do not consider the judge's participation in an earlier trial of the accused as trial counsel to be the disqualifying connection to the instant case; instead I am concerned with his pretrial act of producing essential evidence on a disputed question on the issue of speedy trial in a case where he subsequently sat as a judge on appeal. While he did not actually appear as a witness, the documents in question were provided from his files, and he was the authenticating source for them. The fact that the parties later stipulated to the documents' authenticity does not remove the perception that Commander Burgess would not be able to act impartially on the case when it came before the Court of Military Review of which he was a member.

At trial the accused moved for dismissal of the charges on the ground that he had been in pretrial confinement for 107 days prior to trial in violation of *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Opposing counsel agreed that the accused had been confined since October 3, 1976, when his period of desertion was terminated by apprehension, until the beginning of trial. However, trial counsel contended that for the period from October 3 until November 23 the accused was serving his sentence to confinement at hard labor imposed by a special court-martial for previous unauthorized absences. Trial counsel offered in support of his contention a true copy of a "Court Memorandum" pertaining to the earlier court-martial of the accused which contained the action of the convening authority, dated February 6, 1974. This action reads in pertinent part:

> [O]nly so much of the sentence as provides for confinement at hard labor for two months, forfeiture of $120 per month for one month and performance of hard labor without confinement for 45 days is approved. The sentence of $120 per month forfeiture for one month will be duly executed. The sentence of hard labor without confinement for 45 days is hereby deferred until Seaman Quartermaster·KINCHELOE is returned to military control. The service of the sentence

---

1. There was a delay of 14 days before action was taken to allow for mail time.

2. *See United States v. Hurt*, 9 U.S.C.M.A. 735, 27 C.M.R. 3 (1958).

to confinement at hard labor for two and one half months was deferred on 11 October 1973 and the deferment will remain in effect until Seaman Quartermaster KINCHELOE is returned to military control.

In response to this defense counsel contended that the deferment action would not serve to toll the running of the confinement unless it was requested by the accused and that the Government had failed to show the origin of the request for deferment. *See United States v. Ledbetter,* 2 M.J. 37 (C.M. A.1976). The military judge asked trial counsel to search the record of the first trial for the documents. Trial counsel responded that he had gone through the record of trial and could not find a written application from the accused for deferment of sentence, but that he wanted a recess in order to telephone the trial counsel in the prior case and the executive officer of the accused's ship to see if they would "shed any testimony" on the matter. Further conversation between the parties established that the trial counsel was Commander Burgess and that defense counsel represented the accused at the earlier trial.

After a recess trial counsel informed the military judge that he had contacted Commander Burgess, who had agreed to provide from his own files a copy of the accused's request for deferment and a copy of the convening authority's action. He "invited defense counsel to" participate in a telephone call to Commander Burgess to "satisfy his own questions about whether or not the paperwork did in fact come from Commander BURGESS'S own file . . . and, ask the possibility maybe of a stipulation in that area." Shortly thereafter trial counsel produced thermofax copies of the two documents, both of which were unsigned. Defense counsel refused to stipulate to their authenticity and objected to the military judge's considering them as evidence. Trial counsel replied: "The only way I can authenticate that Your Honor is probably to call the person that made that, Commander BURGESS." After a diversion to consider another issue, the military judge summarized the state of the matter in this way:

Now have counsel talked to each other or tried in some way to resolve the problems we've got—again I can not force the defense to stipulate as to the documents authenticity, even though it purports to have originated from the defense and—defendant and his defense counsel. Again I can not force the defense counsel to take the stand as a witness for the government . . . . [S]o is there some accommodation that counsel can get together and make with respect to this.

Ultimately the parties agreed to the following stipulation of fact:

The attached unsigned request for deferment and convening authority action thereon are true copies of the original located in the file of the CGC PAPAW. Neither the original nor a copy was attached to the original record of trial.

Canon 3 C(1) of the American Bar Association's Code of Judicial Conduct (1972) provides:

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) he served as lawyer in the matter in controversy, . . . or the judge . . . has been a material witness concerning it;

The federal statute concerning the disqualification of judges, 28 U.S.C. § 455, cited by the majority, provides for disqualification "in any proceeding in which his impartiality might reasonably be questioned" [3]

---

3. House Report No. 1453, 93rd Cong., 2d Sess., which accompanied P.L. 93–512, comments:

This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over

when "he has . . . personal knowledge of disputed evidentiary facts concerning the proceedings"; and where serving "in governmental employment . . . participated as a . . . material witness concerning the proceeding." 28 U.S.C. § 455(a), (b)(1) and (3).[4]

In interpreting § 455, the Court in *Roberts v. Bailar*, 625 F.2d 125, 128, 129 (6th Cir. 1980) (footnotes omitted) held:

> Section 455(a) is a self-executing provision for the disqualification of federal judges. There is no particular procedure that a party must follow to obtain judicial disqualification under § 455(a). Instead, the section sets forth a mandatory guideline that federal judges must observe *sua sponte.*
>
> . . . . .
>
> No longer is a judge's introspective estimate of his own ability impartially to hear a case the determinate of disqualification . . . The standard now is objective. It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge . . . . Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial.

I can understand that Commander Burgess might well have forgotten his participation in either of the accused's two trials, but I do not see how a reasonable man, upon reading the transcript of the second trial and knowing the evidentiary facts upon which an important issue was resolved, would not question his further par-

ticipation in the proceeding. Indeed, Commander Burgess was the source of these evidentiary materials and at one time was being contemplated as a witness to authenticate their veracity. This situation is further exacerbated by the fact that the Courts of Military Review possess a unique fact-finding responsibility which would require consideration of the military judge's ruling based on these same facts. Even though the specific issue of the *source of the request* for deferment was not litigated on appeal, a related issue questioning the extent of pretrial confinement was presented. Of course, Commander Burgess would have no difficulty in resolving the authenticity of the deferment documents since he knew they were correct copies; and his knowledge came from outside the trial proceedings.

I do not question the impartiality of Commander Burgess. As a lawyer and judge, he should be able to divorce such matters from his mind. However, at a minimum he should have disclosed his earlier participation to counsel. I personally believe he should have disqualified himself.

"[I]t is the appearance of impartiality with which we are concerned," *Roberts v. Bailar, supra* at 130 (footnote omitted); "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).

I would reverse the decision of the United States Coast Guard Court of Military Review and return the record for further proceedings in which Commander Burgess does not participate.

the case. The language also has the effect of removing the so-called "duty to sit" which has become a gloss on the existing statute. [1974] U.S.Code Cong. & Ad.News, 6351, 6355.

4. *See Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Memorandum of Rehnquist, J.).