UNITED STATES, Appellee,

v.

Keith A. CLARK, Specialist Four, U.S.
Army, Appellant.

No. 60,757.
CM 8700641.

U.S. Court of Military Appeals.

Aug. 29, 1989.

For Appellant: *Luther C. West*, Esq. (argued); *Captain Jeffrey J. Fleming.*

For Appellee: *Captain Patrick D. O'Hare* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Gary L. Hausken.*

### Opinion of the Court

EVERETT, Chief Judge:

A military judge sitting alone as a general court-martial tried appellant on two drug charges. The first asserted that between July 16, 1986, and November 24, 1986, he had conspired with two other soldiers to distribute cocaine. The second charge alleged in two specifications that at Clarksville, Tennessee, on October 26, 1986, he had wrongfully distributed 18.08 grams of cocaine, and that on October 30, he had wrongfully distributed .12 grams of cocaine. *See* Arts. 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively.

Ultimately Clark pleaded guilty to the distribution charge, and the providence of that plea is now at issue here.[1]

### I

At trial, the defense initially claimed that the offenses were not service-connected and had moved to dismiss all charges on jurisdictional grounds.[2] In opposing this motion, the Government offered the testimony of James Patrick Greene that "[d]uring the period of late July through November 1986" he had "engage[d] in the trafficking of cocaine" and had purchased the drug from "Clark and others." On October 26, 1986, he had purchased 32 grams of cocaine from appellant at Clarksville, Tennessee, about a mile to a mile and a half from Fort Campbell; and on October 30, he had also arranged for a government agent

to purchase cocaine from appellant in Clarksville.[3]

Clark also testified on the motion to dismiss. His testimony was intended to establish that no one involved in the two transfers of cocaine had been in uniform or had appeared to be an active-duty military member. He conceded that, when he had first met Greene in July 1984, both had been on active duty.

After the judge denied the motion, Clark pleaded not guilty to the conspiracy charge and guilty to the charge and two specifications of wrongfully distributing cocaine. As a prelude to the providence inquiry, the Government offered a stipulation of fact, to which Clark agreed after suitable inquiry. According to that stipulation:

> During the period August 1986 through November 1986, the accused made approximately five distributions or deliveries of cocaine to Mr. James Patrick Green[e] in Clarksville, Tennessee. This cocaine was obtained by the accused from Specialist Four Ernest B. Johnson, B Company, 501st Signal Battalion, an active duty member of the military services.
>
> On 26 October 1986, the accused distributed approximately 18.08 grams of cocaine, more or less, to James Patrick Green[e]. This distribution took place in Clarksville, Tennessee. The accused knew, at the time of the distribution, that the substance distributed was cocaine and that the distribution was wrongful.
>
> On 30 October 1986, the accused distributed approximately .12 grams of cocaine to Specialist Four Leonard Cecil Porter, an active duty member of the military, in Clarksville, Tennessee. At the time of the distribution of the sub-

---

1. The granted issue is:
   WHETHER APPELLANT'S PLEA OF GUILTY TO CHARGE II AND ITS TWO SPECIFICATIONS WAS PROVIDENTLY ENTERED.

2. At the time of appellant's trial in March 1987, *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), which established service connection as a requirement for military jurisdiction, had not yet been overruled by *Solo-*

*rio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987).

3. Greene testified that previously he had been a soldier but had been court-martialed and sentenced to a bad-conduct discharge and 2 years' confinement. After serving his sentence at Fort Riley, Kansas, he had returned to Fort Campbell, Kentucky, and had been dealing in drugs.

stance, the accused knew that the substance was cocaine and that its distribution was wrongful.

Subsequently, the military judge interrogated Clark under oath concerning his pleas of guilty; and the accused described the two distributions—both of which had been commercial transactions. The military judge determined that the pleas, which had been entered pursuant to a pretrial agreement, were voluntary and found Clark guilty of the two distributions. The Government did not proceed with the conspiracy charge, as to which the military judge found appellant not guilty.

During the sentencing proceedings, the Government called Special Agent Chancellor, who was the team chief of the Drug Suppression Team at Fort Campbell. In the course of his testimony, Chancellor was asked about the electronic surveillance of a conversation between Clark and the government informant, Mr. Greene; and trial counsel "ask[ed] that we be afforded the opportunity to listen to the tape." At this point, the military judge stated, "[W]hile I have it fresh in my mind and before I forget it, on this subject of telephone calls, to which this witness gave some testimony, I want [to] ask, is the defense satisfied that in fact there is no issue of entrapment in this case?" Clark's civilian defense counsel replied:

> Your Honor, not an issue that would be a guilt—something that would be used for guilt or innocence. I think that looking at the reference of the charge on entrapment, we are not saying this is going to be guilt or innocence; clearly this is something that we intend to argue for mitigation, and sentencing.

The military judge then indicated concern that it had been necessary for Greene to call Clark back in connection with arranging a sale of the cocaine on October 26 and that the transaction would not have taken place if Greene had not persisted by making a second call. This colloquy ensued:

> IDC: That is one of the factors that we intend to enter, that we eventually intend to present to the court today.

MJ: But you are satisfied that the fact that he was called and came back is not a sufficient factor so as to constitute a defense of entrapment then?

IDC: Your Honor, I think that—we anticipate the counter-argument of predisposition of the defendant. We are not—I think we have gone over that issue in detail with the accused, and knowing that—knowing all of the factors therein, he has agreed to plead guilty to the Charge. I feel the issues surrounding the general framework of entrapment are still very relevant as mitigating factors for consideration by this court in sentencing.

MJ: But you are satisfied that there was a predisposition which would preclude at least a viable or successful assertion of entrapment?

IDC: Your Honor, we are convinced that it would be—it would be certainly a very arguable position on the part of the Government.

MJ: Well, the standard with regard to the guilty plea, of course, is that if there is in fact a defense to the offense, that then the guilty plea cannot be accepted; so if in fact there is a defense of entrapment, I could not accept the guilty plea. But the defense has certainly had a much greater opportunity to investigate that matter than I have, and you are certainly more familiar with all the facts and circumstances in the case than I am, so if you are satisfied that in fact the circumstances are not such that a defense of entrapment exists, why that is all I would require.

IDC: I feel that a defense of entrapment, and I think this is what we have discussed with the accused in detail, of entrapment, based on military law, successful enough to defeat the charges, would not be—is not sufficient, Your Honor, to render a not guilty verdict (sic) would not be sufficient. Again, I don't want to indicate to the court that we don't consider this something that the court would deem relevant for sentencing and possibly in mitigation and that is

the partial basis for the line of questioning that we have developed.

MJ: But just so you understand now, the test is not whether the defense could win on the issue. If the defense is there, then it is a bar to a guilty plea. Whether the jury would be convinced of the defense or not. You are satisfied that that is not—

IDC: We are satisfied that the jury would not be convinced, Your Honor, of an adequate—to constitute the defense as set out.

MJ: Okay, and you are satisfied specifically with regard to that, that the accused at the time, did have a predisposition which would preclude a successful entrapment defense?

IDC: Your Honor, I think that is a basis for the Stipulation of Fact, indicating 5 prior transfers to Mr. Greene. That is why the Government insisted in putting that in, to preclude us from arguing that, just quite candidly, with the court.

MJ: Okay. I guess having resolved that matter then, is there anything further by either side of Mr. Chancellor?

TC: Your Honor, at this time we would, for the sake of argument, I think that the point has been made with reference to the predisposition and the issue in mitigation of entrapment. I don't think it is really necessary, in light of the recent discussion of those factors, to listen to the tape.

After further evidence in aggravation, the defense recalled Greene and questioned him about his conversations with Clark which led up to the transaction on October 26. On cross-examination by trial counsel, Greene testified that, "on at least 5 occasions" before October 26 and "during the period beginning in August," he had dealt in drugs with Clark. He denied that appellant had "express[ed] any reluctance or hesitation or unwillingness to give" him "drugs."

Clark then took the stand in his own behalf and testified that he had started to use cocaine in 1984 and that in July 1986 he learned that Greene was using cocaine. At that time he knew that Greene had been "dishonorably discharged and was getting out or was out of the military." Greene had told him "how he was ready to get started and making money by distributing cocaine or any other drug if possible, and that is what he wanted to do, and at that time I did know Johnson, and I told him that I knew somebody ... that he can get cocaine from." Subsequently, because of a nonjudicial punishment which he received, Clark had not distributed or used cocaine. He "didn't want to take any more chances."

Around the middle of October, Clark received a call from Greene who said "he wanted to come down here and get business going, and he wanted to know if I would try to get him an ounce of cocaine, and I told him, I said look man, I don't want to mess around, because you know, I've already got in trouble and I don't want to be bothered with it again." However, Greene then called him three or four more times about getting cocaine for him; and "after a while I told him look, I'll try, because I just got tired of his nagging." However, Clark "never intended to try."

Subsequently, Greene had flown into Nashville, Tennessee; and Clark had picked him up. After they left the airport, Greene had mentioned what he would do to "people, if they got in his way." Clark told Greene he had been unable to get cocaine for him; and Greene continued to talk generally about the dire consequences for those who did not cooperate with him. Also, there was further conversation about getting cocaine for Greene. The next morning, Greene had given Clark $1,800.00, which in turn he had used to buy cocaine from another soldier. This cocaine he had delivered to Greene, who had given him back a small quantity, which he placed in small packets. On October 30, Clark had sold one of these packets to someone to whom Greene had introduced him.

After other witnesses had testified in extenuation and mitigation, final arguments were presented by counsel. At one

point during his argument, civilian defense counsel stated:

I think the most significant mitigating factor is something that we alluded to to the court, and that is the maybe side issue of entrapment, not to the extent, because I don't believe in good conscience we can say, looking at the Benchbook instructions, an innocent person, one who is not predisposed or inclined to readily accept; this individual had readily accepted on—as the proof has testified, 5 separate occasions, and those are aggravating factors, but he is on trial for the two charges alone, not any other charge.

Subsequently, he argued:

Mr. Greene set him up, he said he set him up; and how did he set him up? He called him numerous times and I don't think the Government has disputed—really Mr. Greene doesn't dispute, there was reluctance to make this transfer. Look, you know, I'm just busted to E4, I have—they have been checking around my apartment right now, you know, I don't know. Calls him up, calls him up, tries to set up this big deal, has himself body-bugged, CID Agents all around the Nashville Airport, nothing happens. This guy doesn't have anything.

Counsel then adverted to a possible "intimidating factor" implicit in Greene's references to what would happen to people who did not cooperate with him.

After the arguments had concluded, the military judge sentenced Clark to a dishonorable discharge, 12 years' confinement, and reduction to the grade of E–1; and the convening authority approved the sentence except for reducing the confinement to 10 years, pursuant to the pretrial agreement. The Court of Military Review affirmed these results in an opinion by Judge Carmichael, with a concurring opinion by Chief Judge Holdaway. 26 MJ 589 (1988).

## II

### A

The situation in this case is familiar and troublesome in military practice. An accused wishes to enter a plea of guilty—whether because of repentance, a favorable pretrial agreement, or an expectation that such a plea will induce a lower sentence at trial. However, he also wishes to present evidence which will make his case seem as sympathetic as possible to the sentencing authority.

In a civilian court, the defendant's conflicting desires can be accommodated readily, for he is allowed considerable leeway to plead guilty and simultaneously offer evidence inconsistent with that plea. *Cf. North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■ On the other hand, the Uniform Code of Military Justice contains a clear statutory direction that "[i]f an accused … after a plea of guilty sets up matter inconsistent with the plea … a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Art. 45(a), UCMJ, 10 USC § 845(a). Thus, in a trial by court-martial, an accused servicemember cannot plead guilty and yet present testimony that reveals a defense to the charge.

As Judge Carmichael pointed out in the court below:

Frequently, the issue of whether a plea of guilty is provident or improvident is anything but clear. The military judge is caught between Scylla and Charybdis and must chart his passage carefully; not only will he be reversed if reviewing authorities decide that he erroneously accepted an improvident plea, but he will suffer the same fate if he arbitrarily rejects a provident plea. *See United States v. Penister,* 25 MJ 148 (C.M.A. 1987) (military judge rejected provident plea because of misapplication of the law).

26 MJ at 593 (footnote omitted). Thus, as Judge Carmichael observed, Clark claims that his plea of guilty should not be accepted by the military judge, but

[h]ad the military judge found the negotiated plea in this case to be improvident,

thereby nullifying the pretrial agreement in the face of overwhelming government evidence of guilt, the appellant conceivably now would be asserting the contrary position: that the judge erred by *improperly rejecting his guilty pleas.* *Id.* at 593 n. 2.

■ Judge Carmichael properly proceeded from the premise that, in military law, the entrapment defense is concerned with the subjective intent of the accused, rather than the tactics employed by government agents. *See United States v. Vanzandt,* 14 MJ 332, 343 (CMA 1982); *United States v. Garcia,* 1 MJ 26. (CMA 1975); *United States v. Meyers,* 21 MJ 1007, 1011–1012 (ACMR 1986). *Cf. Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).[4] If an accused has a "predisposition" to engage in a crime, then he cannot successfully claim that he was entrapped into committing it. *Hampton v. United States,* 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976) (plurality opinion). Typically, an entrapment defense permits the Government to offer evidence of an accused's prior misconduct in an effort to show that he possessed the required predisposition; and so entrapment is a dangerous defense, which defense lawyers are cautious in using.

■ To forestall an entrapment defense in this case, the Government offered a stipulation of fact which showed that Clark had distributed drugs to Greene prior to the two distributions for which he was being tried. Clark had specifically agreed to the stipulation. Under these circumstances, the record contained ample evidence

that this appellant was predisposed to commit the distribution offenses to which he pleaded guilty.

In view of this evidence, Judge Carmichael concluded that entrapment "was not a credible legal defense." 26 MJ at 594. We would go even further. Under the evidence in this record, it appears to us that Clark had *no* defense of entrapment. His hesitancy about continuing as a drug dealer appears not to have resulted from a reluctance to commit drug offenses but, instead, from a fear of apprehension; and we do not equate such a fear to lack of predisposition.[5]

■ Clark's civilian defense counsel used the term "entrapment" in his argument. However, it seems clear that he was not using it in the sense of an available legal defense; and in any event, a maladroit comment by counsel cannot create an "inconsisten[cy]" which otherwise is absent from the record. Furthermore, in view of Clark's specific agreement to the stipulation of fact which precluded an entrapment defense, we believe that it was unnecessary for the judge to ask him whether he agreed with his counsel that no entrapment defense was raised.

■ Under the express language of Article 45, a military judge cannot allow a guilty plea to stand if the defense offers "inconsistent" matter, even though clearly the accused and his counsel have made a sound tactical judgment that, in light of the evidence available to the prosecution, such a plea would be in the accused's best interest. On the other hand, in view of the well-known tendency of human beings to rationalize their behavior, *see United*

**4.** The Supreme Court has recognized the possibility that government tactics might be so outrageous as to violate due process and entitle a defendant to dismiss all the charges against him. *See United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). *See also Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion). However, the Court has not yet actually endorsed this concept, and it has not yet granted a defendant relief on these grounds. Furthermore, lower federal courts

have not been generous in finding that the actions of government agents violated due process.

**5.** Of course, the threatening comments by Greene as to what he would do to those who did not help him were far from sufficient to raise a defense of duress. *See* RCM 916(h), Manual for Courts–Martial, United States, 1984; *United States v. Palus,* 13 MJ 179 (CMA 1982); *United States v. Jemmings,* 1 MJ 414 (CMA 1976).

*States v. Penister, supra* at 153 (Cox, J., concurring), in a borderline case the military judge can give weight to the defense evaluation of the evidence. "[T]he [mere] tactical possibility of raising a defense" does not of itself warrant rejection of an otherwise provident plea. *See United States v. Logan*, 22 USCMA 349, 351, 47 CMR 1, 3 (1973).[6]

B

■ In his concurring opinion, Chief Judge Holdaway took a different approach—that even a credible defense of entrapment should not be considered inconsistent with a plea of guilty. He suggests that the defense is "in the nature of confession and avoidance or estoppel" and, thus, "is similar to defenses based on the statute of limitations or former jeopardy, both of which defenses can be waived" under certain circumstances. *See* RCM 907(b)(2), Manual for Courts–Martial, United States, 1984. He asserts that "[e]ntrapment merely seeks to avoid the consequences of the criminal act because of governmental misconduct." 26 MJ at 596.

Chief Judge Holdaway's view has considerable appeal and would be especially persuasive if military justice had adopted the doctrine of "objective entrapment"—which focuses on governmental misconduct. However, despite the contrary precedent in some jurisdictions and the citicisms of some legal commentators, our Court has followed the Supreme Court and accepted the doctrine of "subjective entrapment"— which centers on the accused's *mens rea. See United States v. Vanzandt, supra.*

Accordingly, Article 45 requires that for those offenses in which criminal intent is an element—as is true of most serious

crimes—a tendered guilty plea must be rejected when an accused testifies or offers evidence that, because of entrapment, he lacked that intent. Furthermore, to adopt Chief Judge Holdaway's view would require drawing too many fine distinctions. For example, if an entrapment defense is not "inconsistent" with a guilty plea, what about other defenses, such as duress or self-defense?

We agree with Chief Judge Holdaway that some defenses, such as the statute of limitations, are so separate from the elements of the charged offense that they may be waived by an accused, *see* RCM 907(b)(2)(B), and that, despite Article 45, an accused who has been properly advised may plead guilty even though he presents evidence tending to show that he was entitled to dismissal of the charges on due process grounds because of the Government's outrageous conduct.[7]

Perhaps Chief Judge Holdaway's interpretation of Article 45 might apply to a situation where an accused has offered evidence of lack of mental responsibility[8]—an issue as to which now an accused bears the burden of proof and which is to be separately determined by the factfinder. *See* RCM 916(k)(3)(A) and (C). However, with respect to entrapment—which the Government must disprove beyond a reasonable doubt, *see* RCM 916(b) and (g); *cf.* W. La-Fave and J. Israel, *Criminal Procedure* § 5.3(d) (1984)—we conclude that Article 45 does apply and precludes acceptance of a guilty plea if an accused has presented evidence of entrapment. However, we hold that appellant did not raise any defense inconsistent with the guilty pleas and that the pleas were properly received.

---

**6.** Conversely, in a contested case where it is unclear that a defense has been reasonably raised by the evidence and the defense counsel has requested an instruction thereon, the military judge would be wise to resolve the doubt in favor of giving the instruction. *See United States v. Staten*, 6 MJ 275, 277 (CMA 1979).

**7.** Likewise, if military justice followed the doctrine of "objective entrapment," the military

judge would not be required to reject a guilty plea even when an accused had testified that he was entrapped.

**8.** However, this rationale could not apply as to a claim of partial mental responsibility. *See* RCM 916(k)(2). *Cf. Ellis v. Jacob*, 26 MJ 90 (CMA 1988).

### III

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.