OPINION OF THE COURT
YOUNG, Senior Judge:
Pursuant to a pretrial agreement, appellant pled guilty to four specifications of mal *685 treating or oppressing a subordinate and four specifications of committing indecent assaults on the same subordinates. Articles 93 and 134, UCMJ, 10 U.S.C. §§ 893, 934 (1988). The military judge convicted him of these offenses and sentenced appellant to a bad-conduct discharge and confinement for 4 months, which was approved by the convening authority. Appellant assigned two errors: (1) specifications 3 and 4 of Charge II are multiplicious for findings; and (2) the record fails to establish the convening authority considered appellant's clemency submissions. This Court specified an additional issue: whether appellant’s pleas were provident. We find appellant’s pleas were improvident and set aside the findings and sentence.
I. Facts
Appellant is a member of the Air Force Reserves who was called to active duty for the purpose of this court-martial. The offenses of which appellant was convicted occurred while he was in a military status. The two victims of appellant’s offenses were Technical Sergeant S and Staff Sergeant W, female members of the Air Force Reserves. Both sergeants were subordinate to, and supervised by, appellant and were performing military duties at the time of the offenses.
On 8 October 1991, appellant and Sergeant S were performing temporary duty at Lowry Air Force Base. Sergeant S went to appellant’s room to get a ride to dinner. She entered the room and sat down on one of the beds while appellant got ready. Appellant started to make unwelcome and uninvited comments and physical contact with her. He massaged her back, fondled her breasts, and put his hand between her legs. Sergeant S resisted these assaults, but appellant persists ed.
Between 1 and 7 November 1992, appellant and Sergeant W were performing temporary duty at Tinker Air Force Base. On 1 November, appellant went to Sergeant Ws quarters and insisted that they talk. After talking for a few minutes, Sergeant W said she was tired and told appellant to leave. Appellant stood up, grabbed Sergeant Ws breasts, and said, “Does it bother you if I touch your tits? I don’t know why it should, it’s not like I haven’t touched tits before.” Sergeant W slapped appellant’s hands down, yelled at him for such unprofessional behavior, and objected that they were both married. Appellant said their spouses need not know, “I’ve fantasized about you for a long time. I’d like to beat off on you and eat you.” Sergeant W insisted that appellant leave. He got up, started to leave, then grabbed Sergeant W and tried unsuccessfully to kiss her. He left the room saying, “I may not have you tonight, but someday I will have you. I’ll go to my room and beat off thinking about you.”
The following day, appellant asked Sergeant W to accompany him in driving an ill co-worker back to quarters. After dropping off the co-worker, appellant tried to kiss Sergeant W, but she physically pushed him away. On 5 November, appellant and Sergeant W had another confrontation in which he said, “I want you. I know you’re not an easy fuck, but neither am I.” After a “tumultuous argument,” appellant grabbed Sergeant W behind her head with one hand and pinched her jaw with the other in an attempt to hold her head steady while he kissed her. Sergeant W successfully resisted this assault.
The providence inquiry was confusing because the military judge failed to keep his inquiry focused on a specific offense or indeed a specific incident. But, it clearly showed appellant’s refusal to disavow the defense of mistake of fact.
MJ: The allegation is oppression or maltreatment. Do you feel that your conduct with her that evening in your room was either one of those definitions or terms?
ACC: At the time that it happened I didn’t think that it was, but looking back on it now, and going through what I’ve done, I realize that it was inappropriate.
MJ: Do you feel now that it does somehow and in some way constitute sexual harassment?
ACC: Yes, Sir.
MJ: Did you say that this was a surprise to her when you did this to her? That she wasn’t aware that it was coming? *686 Did she in anyway consent or invite this kind of conduct by you?
ACC: At the time that it was happening, I felt as though she was consenting. But, now that I look back on it, I realize that she wasn’t and that it was inappropriate.
MJ: Can you describe what made you feel at the time that she was consenting?
ACC: Just the fact that she came over to the room and that we were drinking beer together, that’s all.
MJ: Do you understand now that people have the right to be free from unwanted sexual contact, sexual touching, and even sexual offensive remarks?
ACC: Yes, Sir, I do.
MJ: Her response to your approach was? What was it?
ACC: That I can recall, at the time she just said, “Let’s not do this. Let’s not get involved in this.” She just basically told me to leave her alone and pushed me away, and I left the room.
MJ: So, does that, upon reflection, indicate to you that maybe she didn’t consent, even though she was in your room drinking a beer?
ACC: Yes, Sir.
The military judge moved on to the offenses against Sergeant W on 1 November 1992.
MJ: Do you feel at the time that she was somehow consenting to these advances by you or these comments by you?
ACC: I think that it was probably due to the lateness and the alcohol and everything that I was feeling at the time that she was consenting. However, due to circumstances afterwards and her reaction of pushing me away and everything and my looking back at it, I would have to say that she was not.
After discussing the 2 November offenses, the military judge asked appellant to “confirm that in none of the cases that these women had made statements to you which would lead you to believe they were willing to engage in this sexual activity?”
ACC: Yes, Sir.
MJ: You just maybe at the time assumed that because of the situation that maybe they would consent to your approaches? Is that right?
ACC: Yes, Sir.
MJ: But, their reactions afterwards now leads you to believe that these were not consensual acts?
ACC: Yes, Sir.
Appellant contended he was intoxicated during the incidents on 1 and 5 November. The military judge did not discuss the defense of voluntary intoxication with appellant.
The trial counsel expressed some concern about a possible mistake of fact defense to the offenses concerning Sergeant S. The military judge asked appellant what Sergeant S might have done to make him think she was consenting.
ACC: Probably the fact that she came to the room, that she was drinking a beer after I had come out of the shower, and that she was sitting on my bed, would probably be the only thing; not that she did anything physically to consent.
MJ: Now, she didn’t say anything about “Let’s get it on,” or anything like that that would encourage you orally, I mean in talking to you?
ACC: No, Sir.
MJ: Just the fact that she [sic] there? In other words, that’s the basis on which you thought that maybe it was okay to go ahead and do these approaches?
ACC: Yes, that’s probably it. I personally just thought that she was and that it wasn’t unreasonable.
Later, appellant suggested that the fact that Sergeant S did not resist when he rubbed her back gave him reason to believe she was consenting. He further admitted that in this instance, rubbing a person’s back did not necessarily have any sexual “condensations [sic].” The trial counsel expressed willingness to concede the pleas were provident if the defense did not feel the defense of mistake was applicable. The defense counsel responded, “[W]e don’t intend to raise the defense of mistake of fact.” Without ever getting appellant to concede that his belief the victims were consenting to his conduct *687 was unreasonable, the military judge concluded that appellant “had no reasonable basis to believe ... that Sergeant [S] consented to these sexual approaches.”
In his unsworn statement, appellant stated, “however, I know that I never would have done what I did if I had remained sober. My drunken state made me think that Sergeant [W] and Sergeant [S] actually wanted to be intimate with me. I know now that this was not the case.” During his sentencing argument, appellant’s defense counsel said the advantage in having the case tried before the military judge alone was that the military judge recognized the difference between a defense and mitigation. He further said, “We have no defense and we are not asserting any.” But, later in the argument, the defense counsel asserted that although appellant’s conduct was unreasonable, it was not all that unreasonable in light of the victims’ actions.
II. Discussion
“A providence inquiry into a guilty plea must establish, inter alia, ‘not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea.’ ” United States v. Higgins, 40 M.J. 67, 68 (C.M.A.1994) (quoting United States v. Davenport, 9 M.J. 364, 367 (C.M.A.1980)); R.C.M. 910(c)-(e). If at any time during the proceeding the accused “sets up matter inconsistent with the plea,” the military judge must resolve the inconsistency or reject the plea. Art. 45(a), UCMJ; see R.C.M. 910(h)(2); United States v. Timmins, 21 U.S.C.M.A. 475, 45 C.M.R. 249, 253 (1972). We will not reject an accused’s guilty plea unless we find a substantial conflict, not the mere possibility of conflict, between the pleas and the accused’s statement or the evidence of record. United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991) (citing United States v. Logan, 22 U.S.C.M.A. 349, 351, 47 C.M.R. 1, 3 (1973)).
An assault “must be done ... without the lawful consent of the person affected.” Manual for Courts-Martial, United States, 1984, Part TV, ¶ 54c(1)(a); United States v. Watson, 31 M.J. 49, 51 (C.M.A.1990) (citing United States v. Wilson, 13 M.J. 247, 251 (C.M.A.1982)). Mistake of fact as to the consent of the victim is a defense to indecent assault. United States v. Greaves, 40 M.J. 432 (C.M.A.1994); Watson. Indecent assault is a specific intent offense only with regard to the element of the accused’s intent to gratify his sexual desires, not to the offense in general. See United States v. Langley, 33 M.J. 278, 282 (C.M.A.1991) (citing United States v. McFarlin, 19 M.J. 790 (A.C.M.R.)), pet. denied, 20 M.J. 314 (1985). Thus, to be a defense, appellant’s mistake as to the consent of his victims must have been honest and reasonable. Greaves, 40 M.J. at 433. While the military judge concluded that appellant’s belief that the women were consenting was not reasonable, it was not for him to say.
In the military, the providence of a guilty plea rests on what the accused actually admits on the record. See United States v. Adams, 33 M.J. 300, 303 (C.M.A.1991); United States v. Jemmings, 1 M.J. 414, 418 (C.M.A.1976). The fact that a stipulation of fact or other evidence would convince the factfinder of appellant’s guilt beyond a reasonable doubt is not an adequate substitute when the accused interjects matter patently inconsistent with his plea. The military judge does not have the power to decide that an accused’s mistaken belief was unreasonable. The accused himself must acknowledge or concede that it was unreasonable. Appellant never did. In fact, he specifically asserted his belief that the women were consenting was not unreasonable. The guilty pleas to the indecent assault specifications were improvident.
The next question is whether the accused’s pleas to the offenses charged under Article 93, UCMJ, were similarly defective. The elements of cruelty and maltreatment are:
(1) that a certain person was subject to the orders of the accused; and
(2) that the accused was cruel toward, or oppressed, or maltreated that person.
Manual for Courts-Martial, United States, 1984, Part IV, ¶ 17b. The maltreatment or oppression “must be measured by an objective standard.” Id. at ¶ 17c(2). Neverthe *688 less, in order to determine if that objective standard has been violated, we must look to all the facts and circumstances of the incidents. We believe that if either of the women had freely and voluntarily consented to appellant’s conduct, whatever offenses they might be, they would not be cruelty or maltreatment under Article 93, UCMJ. It would be objectively unreasonable to find an accused guilty of maltreatment or oppression when the victim freely and voluntarily consented to the conduct. Since appellant insisted that, at the time of the offenses, he thought the women were consenting, the military judge should have rejected his plea to the oppression and maltreatment offenses. Therefore, we find appellant’s pleas of guilty to the offenses under Article 93, UCMJ, to be improvident, as well.
We share the frustration Chief Judge Dixon expresses in his dissent. But, as we have discussed on previous occasions, “[i]n the military, the providence of a guilty plea rests on what the accused actually admits on the record” United States v. Eddy, 41 M.J. 786 (A.F.Ct.Crim.App.1995) (citing United States v. Clark, 28 M.J. 401, 406 (C.M.A.1989) (based on wording of Article 45(a), UCMJ, Court of Military Appeals rejected application to military of North Carolina v. Alford 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970)).
We are not unmindful of the Court of Appeals dictum in Clark that, “in a borderline case the military judge can give weight to the defense evaluation of the evidence.” Clark, 28 M. J. at 407. But, this is not such a case. For over 100 years of military legal history, courts-martial have been unable to accept guilty pleas which are inconsistent with the accused’s statements to the court. Article 45(a), UCMJ; Article of War 21 (1920); Manual for Courts-Martial, United States Army, 1928, ¶ 70; William Winthrop, Military Law and Precedents 277 (2d ed. 1920) (originally published 1886). This is another one of those cases in which the guilty pleas do not comport with Article 45(a), UCMJ.
III. Conclusion
In light of our resolution of the specified issue, we need not reach the assigned errors. The findings of guilty are set aside. The convening authority may order a rehearing.
Judge BECKER concurs.
DIXON, Chief Judge
(dissenting):
I cannot concur with the majority’s conclusion that appellant’s pleas were improvident! In my view, this decision is an example of how an overly strict interpretation of Article 45, UCMJ, serves neither the appellant nor the military justice system.[1] Here is the situation we have. It was appellant’s desire to plead guilty. He admitted he was pleading guilty because he was in fact guilty. The factual circumstances as revealed by appellant himself objectively support his plea. Moreover, appellant obtained concessions from the government by not contesting his guilt. Taking all of these factors into consideration and giving due deference to the fact that the military judge accepted the pleas, in my view appellant’s conviction should be affirmed.
Appellant was initially charged with multiple specifications of maltreating subordinates and also of indecently assaulting females with whom he served on active duty. The charges were investigated pursuant to Article 32, UCMJ, and a decision was made to refer them to trial. Acknowledging his guilt to several of the specifications, appellant offered to enter a guilty plea in exchange for the withdrawal of other specifications and the agreement of the convening authority to limit the approved sentence to a bad-conduct discharge and confinement of no more than 6 months. The offer to enter into a pre-trial agreement was accepted.
At trial, appellant elected to be tried by the military judge sitting alone and entered his pleas of guilty. A stipulation of fact was introduced as Prosecution Exhibit 2 which established factual support for each of the elements of the offenses charged. The maximum authorized punishment for the offenses *689 to which appellant entered pleas of guilty was a dishonorable discharge, confinement for 24 years, total forfeitures, and a reduction to the grade of E-l. The military judge fully advised appellant concerning the consequences of his pleas of guilty. Included within that advice was the following:
A plea of guilty is the strongest form of proof known to law and it is like making a confession in open court. On your plea of guilty alone, and without receiving any evidence, the court could find you guilty of the offenses to which you have plead guilty. Your plea will not be accepted unless you realize that by your plea of guilty you are admitting every act or omission and every element of those offenses to which you are pleading guilty. Furthermore, that you are pleading guilty because you are in fact guilty.
The appellant acknowledged he understood the consequences of his pleas, that he had sufficient time to discuss his case and his pleas with his counsel, was satisfied with his counsel and the advice he had received, and was entering his pleas freely and voluntarily. Before accepting the pleas, the military judge conducted an on-the-record inquiry of appellant as required by United States v. Care, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). The defense counsel advised the military judge that some of the facts and circumstances the appellant would address during the Care inquiry would be based on his information and belief because he was intoxicated during some of the events. The Care inquiry extended over 26 pages of the 97 page record of trial.
At various points during the Care inquiry, appellant indicated he felt his victims were consenting to his advances while the events were occurring, but upon reflection, based on their words and actions, realized that they had not. When asked why he had felt at the time they were consenting, he suggested it was because they were in the same room, that they were drinking beer together, the hour was late, and his judgement was clouded by the alcohol he had been drinking. On further inquiry, he admitted the victims were upset, had voiced their objections, had pushed him away, and asked him to leave them alone.
After the military judge had satisfied himself that the pleas were provident, he asked the trial counsel if there were any other areas that they needed to explore. The trial counsel suggested further inquiry concerning a mistake of fact defense to the specification involving the offenses in October, 1991 with TSgt S, one of appellant’s subordinates. This incident, according to the stipulation of fact, involved appellant and TSgt S, who both traveled to Lowry Air Force Base for a temporary duty assignment (TDY). On the second day of the TDY, TSgt S went over to appellant’s room to obtain a ride to dinner. Appellant invited TSgt S into his room while he secured his room prior to leaving for dinner. TSgt S sat down on one of the twin beds in the room while appellant prepared to depart. Before they left, appellant sat down beside her and began making unwelcome and uninvited physical and verbal sexual advances by massaging her back, fondling her breasts and putting his hand between her legs. TSgt S resisted appellant’s sexual advances by pushing him away and reminding him that he was her supervisor and that his behavior was inappropriate. She insisted they leave immediately for dinner.
Responding to the suggestion by the trial counsel, the military judge asked appellant to clarify again what TSgt S did that made him think that she was consenting to his overtures. Appellant responded:
Probably the fact that she came to the room, that she was drinking a beer after I had come out of the shower, and that she was sitting on my bed, would probably be the only thing; not that she did anything physically to consent.
The military judge continued the inquiry and appellant admitted TSgt S had resisted his advances and told him to stop. At that point the following colloquy took place:
MJ: Captain Guillory, are you still concerned about the possible issue of mistake of fact?
CTC: Well, as long as the defense has reviewed it and they’re aware of the defense and that they don’t feel that it is applicable in this case, then I guess the *690 government doesn’t believe that it would be an appropriate defense.
MJ: Any comment to make on that, Captain Garner?
DC: No, Sir, other than we don’t intend to raise the defense of mistake of fact.
MJ: Okay. I feel satisfied that Sergeant Garcia had no reasonable basis to believe, based on his answers to my questions, that Sergeant [S] consented to these sexual approaches. That is, fondling her breasts and putting his hand between her legs. So, I don’t believe that there is a mistake of fact defense there either.
Furthermore, the stipulation does indicate that Sergeant Garcia apparently persisted in his approaches to Sergeant [S] even after she resisted and told him that they shouldn’t be doing this because he was her supervisor.
Under these circumstances, does the law require us to set aside appellant’s pleas as improvident? I don’t think so! Do we really have a legal problem with appellant’s pleas or have we simply created a problem? Does justice, fairness, congressional mandate, or any other legal principle require us to set aside this conviction? The pertinent portion of Article 45, UCMJ, reads as follows:
(a) If an accused after arraignment makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he had entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.
We have considerable case law giving interpretations to Article 45 and explaining what constitutes an improvident plea or setting up matter inconsistent with a guilty plea. In my view, the guidance from the United States Court of Military Appeals (now United States Court of Appeals for the Armed Forces) has been clear in this regard. In one of the seminal cases, that Court said:
The standard for finding error in a judge’s acceptance of a guilty plea was articulated long ago by this Court. In United States v. Logan, 22 U.S.C.M.A 349, 351, 47 C.M.R. 1, 3 (1973), this Court rejected “the mere possibility of conflict” standard for the more realistic “substantial basis” test. See United States v. Clark, 28 M.J. 401, 407 (C.M.A.1989). Where the possibility of a defense exists, this Court has indeed suggested that a military judge secure satisfactory disclaimers by the accused of this defense. United States v. Lee, 16 M.J. 278 (C.M.A.1993); United States v. Jemmings, 1 M.J. 414, 418 (C.M.A.1976). The bottom line, however is that rejection of the plea requires that the record of trial show a “substantial basis” in law and fact for questioning the guilty plea.
United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991).
Equally enlightening are the following words from an earlier opinion:
Under the express language of Article 45, a military judge cannot allow a guilty plea to stand if the defense offers “inconsistent” matter, even though clearly the accused and his counsel have made a sound tactical judgment that, in light of the evidence available to the prosecution, such a plea would be in the accused’s best interest. On the other hand, in view of the well-known tendency of human beings to rationalize their behavior, see United States v. Penister, supra, at 153 (Cox, J., concurring), in a borderline case the military judge can give weight to the defense evaluation of the evidence.
United States v. Clark, 28 M.J. 401, 406-7 (C.M.A.1989).
I submit the case at hand is exactly the kind of borderline case that warrants upholding the finding by the military judge that appellant’s pleas were provident. This is not a case which justifies having the trier of fact determine if appellant had a honest and reasonable belief that his victims had consented. In my view, any defense based upon appellant’s belief that his victims had consented would be so outlandish as to be absurd. See United States v. Adams, 33 M.J. 300, 303 (C.M.A.1991).[2]
*691 As Judge Cox noted in his concurring opinion in Penister:
Often an accused is reluctant to admit a particular aspect of an offense. However, that should not vitiate his guilty plea if he recognizes that the evidence against him will prove the point, and he admits his guilt to the offense.
We should not overlook human nature as we go about the business of justice. One aspect of human beings is that we rationalize our behavior and, although sometimes the rationalization is “inconsistent with the plea,” more often than not it is an effort by the accused to justify his misbehavior.
A good trial judge can usually sort out the guilty plea and determine if an accused is so pleading because he has committed the offense charged.
United States v. Penister, 25 M.J. 148, 153 (C.M.A.1987).
We have before us the situation Judge Cox was describing in Penister. The military judge obviously recognized it. We should give the military judge’s decision due deference. There is absolutely no danger here that appellant was misled or confused about his guilt. No practical purpose would have been served if the military judge had entered a plea of not guilty and then, on the very evidence before him, entered a finding of guilty in a judge alone trial. I do not believe the law requires such a charade. If it does, then the law is absurd. I choose not to interpret the law in a way that makes it absurd. Accordingly, I would find appellant’s pleas provident and affirm.

. The issue concerning whether appellant’s pleas were provident was raised by this Court on our own initiative. It was not an assigned error.

. I distinguished this case from the situation in Adams where the appellant’s version of the facts *691 had at least a ring of plausibility. His explanation that, in a state of semiawareness, he believed the individual, who entered his bed and began initiating sex, was his wife was not blatantly unbelievable. It raised a legitimate defense of mistake of fact in light of his contentions that he was in his own marital bed, that the room was dark, that it was not unusual for his wife to initiate sex, and that he was asleep when the individual who entered the room began to arouse him.