OPINION OF THE COURT
JOHNSON, Judge:
After entering a plea of guilty to the lesser-included offense of attempted unpremeditated murder, as well as to larceny and obstruction of justice, the appellant was tried by a general court-martial composed of a military judge sitting alone, on the greater offense of premeditated murder. The military judge found the appellant guilty of premeditated murder, larceny,[1] and obstruction of justice, in violation of Articles 118,121 and 134, UCMJ, 10 U.S.C. §§ 918, 921, 934. The military judge sentenced him to a dishonorable discharge, confinement for life with the possibility of parole, forfeiture of all pay and allowances, and reduction to E-l. The convening authority approved the findings and sentence as adjudged.
The case is before this Court for our review under Article 66, UCMJ, 10 U.S.C. § 866. On appeal, the appellant raises the following five issues for our consideration: (1) Whether his guilty pleas to attempted unpremeditated murder and obstruction of justice were improvident; (2) Whether the military judge was impartial; (3) Whether the addendum to the staff judge advocate’s recommendation (SJAR) contained “new matter” requiring service upon the appellant; (4) Whether the staff judge advocate (SJA) *589 provided erroneous advice to the convening authority concerning the sentence;[2] and (5) Whether the appellant’s sentence is inappropriately severe.[3] For the reasons set forth below, we find error and return the ease to The Judge Advocate General for corrective action consistent with this opinion.

Factual Background

This ease involves the death of Airman First Class (A1C) Charles Eskew, Jr., a 20-year-old who was assigned to the 18th Maintenance Squadron at Kadena Air Base, Okinawa, Japan. Although the appellant admitted killing A1C Eskew, the issue during the trial was whether he murdered A1C Eskew with premeditation.
The appellant and A1C Eskew, who were co-workers, socialized together on the evening of 16 November 2001. They visited a friend in the hospital who had just given birth to a baby. Thereafter they stopped to buy dinner and some alcoholic beverages. They returned to A1C Eskew’s dormitory room where they began drinking and watching movies. By late evening, A1C Eskew became very intoxicated, to the point that he vomited and soon thereafter fell asleep. The appellant and another airman[4] helped A1C Eskew get into bed. While A1C Eskew lay on the bed, the appellant placed his hands around A1C Eskew’s neck and put a pillow over his face. Once dead, the appellant cut A1C Eskew’s wrist with a knife. Before leaving A1C Eskew’s room that night, the appellant took the victim’s TV, DVD player, VCR, DVDs, videos, and CDs.

Providency of the Plea

The appellant challenges the providency of his guilty plea to attempted unpremeditated murder and obstruction of justice. Specifically, he alleges the military judge failed to adequately inquire into the potential duress defense raised by the appellant’s testimony in findings. The appellant asks this Court to set aside both charges because his testimony in findings was inconsistent with his testimony during the providence inquiry.
During the providence inquiry, the appellant admitted that all the elements and definitions read by the military judge accurately described what he did. First, the appellant testified he placed his hands on A1C Eskew’s neck with the intent to kill him. Next, the appellant said that he slit A1C Eskew’s wrist with a knife to make it look like the victim had committed suicide to throw off any future investigation that might point in the appellant’s direction. The appellant also told the military judge that he took A1C Eskew’s TV, VCR, DVD player, DVDs, tapes, and CDs, before leaving his dormitory room that night. Additionally, the appellant told the military judge that he did not believe that he had any legal justification or excuse for what he did.
After the military judge accepted the appellant’s plea, the prosecution presented evidence to prove the greater charged offense of premeditated murder. After the prosecution rested, the defense presented its case. The appellant took the stand and gave a different version of his actions on the evening of 16 November 2001. He testified that he took A1C Eskew’s personal belongings and placed them in his car. When he returned to A1C Eskew’s room to retrieve wires for the electronic components he stole, he saw A1C Anthony Caluya, a member of his squadron, on the bed leaning over A1C Eskew. The appellant said A1C Caluya forced him to kill A1C Eskew when A1C Caluya told him to “finish him [A1C Eskew] off.” Although the appellant said he and A1C Caluya had engaged in homosexual relations approximately seven times, he claimed that he was afraid of A1C Caluya. The appellant testified that, as a result he strangled A1C Eskew because A1C Caluya threatened to hurt the appellant’s pregnant girlfriend, to tell her that the appellant was gay, and because A1C Caluya was armed with a knife. After the appellant strangled A1C Eskew, A1C Caluya told him to “cover your tracks.” In response, the appellant grabbed the knife from A1C Calu- *590 ya and cut A1C Eskew’s wrist to make it appear as though he had committed suicide.
The military judge found the appellant guilty of premeditated murder, obstruction of justice, and larceny. The military judge also made specific findings: “Pursuant to [Rule for Courts-Martial] 918(b), the Court finds the findings as to Charge III and its Specification [obstruction of justice] constitute a complete and separate act, which arose outside the commission of the offense, captured in Charge I and its Specification [premeditated murder]. Specifically, I find that the slashing of Airman Eskew’s wrist by the accused was not part of any plan, nor a component part of premeditation, attendant to the finding under Charge I.”
1. Attempted Unpremeditated Murder
The appellant avers that the military judge should have reopened the providence inquiry and addressed the potential duress defense. We agree. In United States v. Care, 40 C.M.R. 247, 1969 WL 6059 (C.M.A.1969), our superior court imposed an affirmative duty on military judges during providence inquiries to conduct a detailed inquiry into the offenses charged, the accused’s understanding of the elements of each offense, the accused’s conduct, and the accused’s willingness to plead guilty. “A guilty plea will be rejected only where the record of trial shows a substantial basis in law and fact for questioning the plea.” United States v. Hardeman, 59 M.J. 389, 391 (C.A.A.F.2004) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)). If an accused, after a plea of guilty, sets up matter inconsistent with the plea, “a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty.” United States v. Clark, 28 M.J. 401, 405 (C.M.A.1989) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a)). See also Hardeman, 59 M.J. at 391. Furthermore, “an accused servicemember cannot plead guilty and yet present testimony that reveals a defense to the charge.” Clark, 28 M.J. at 405. Article 45, UCMJ, 10 U.S.C. § 845, requires military judges to resolve inconsistencies and defenses during the providence inquiry or else the guilty plea must be rejected. United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F.1996) (citing United States v. Jemmings, 1 M.J. 414, 418 (C.M.A.1976)). See also United States v. Perron, 58 M.J. 78, 82 (C.A.A.F.2003).
The appellant raised a potential duress defense when he testified that A1C Caluya forced him to strangle A1C Eskew and cut his wrist. Rule for Courts-Martial (R.C.M.) 916(h) provides that duress “is a defense to any offense except killing an innocent person that the accused’s participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act” (emphasis added). The Manual’s duress defense is grounded in common law. United States v. Vasquez, 48 M.J. 426, 429 (C.A.A.F.1998). Duress applies to any offense except where the alleged criminal act is murder and “does not apply to justify a killing.” Id. at 430. Although the appellant pled guilty to attempted unpremeditated murder, the fact remains that this case is about the killing of an innocent person. Accordingly, we hold the duress defense, as a matter of law, was not available to this appellant on the charge of attempted unpremeditated murder because he killed an innocent person, A1C Eskew.
Nevertheless, we find that the military judge erred when he did not reopen the providence inquiry to discuss the potential defense of duress concerning the charge of attempted unpremeditated murder. The appellant made several statements during the litigated portion of the trial that were in conflict with his guilty plea. See United States v. Lee, 16 M.J. 278, 281 (C.M.A.1983). “It is unnecessary that his statements] be credible; instead, [they] only need be inconsistent.” Id. Specifically, the appellant testified that he killed A1C Eskew because A1C Caluya threatened him and that he had acted out of fear. Based on the providence inquiry, we have no question that the appellant intended to kill A1C Eskew. We also do not find his testimony claiming that he felt threatened credible. Because the military judge failed to resolve the differences be *591 tween the appellant’s inconsistent statements and his guilty plea, we cannot view the appellant’s plea to unpremeditated murder as provident. See Article 45(a) UCMJ, 10 U.S.C. 845(a); Jemmings, 1 M.J. at 418.
2. Premeditated Murder
Even though we found error in the military judge’s decision to accept the appellant’s guilty plea to the charge of attempted unpremeditated murder, we are satisfied that the error was harmless beyond a reasonable doubt. In the instant case, the appellant pled not guilty to the greater offense of premeditated murder. Even after excluding all of the admissions the appellant made during the Care inquiry, the government presented overwhelmingly persuasive evidence during the litigated portion of the trial to prove premeditated murder beyond a reasonable doubt. Irrespective of the fact that we find the appellant’s guilty plea to attempted unpremeditated murder improvident, we find the findings of guilty to premeditated murder legally and factually sufficient. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Turner, 25 M.J. 324, 324-25 (C.M.A.1987).
Without defense objection, two of the appellant’s sworn statements were introduced into evidence. In his 18 November 2001 statement, the appellant told Air Force Office of Special Investigations (AFOSI) agents that he was with A1C Eskew during the evening hours of 16 November 2001. The appellant stated that he was drinking with A1C Eskew in his dormitory room and A1C Eskew got drunk. In his 19 November 2001 sworn statement, the appellant admitted putting some drops of Visine in A1C Eskew’s drink on the night of 16 November 2001. Shortly thereafter, A1C Eskew started to vomit. The appellant noticed that A1C Es-kew’s breathing was labored. He said it sounded like there was something stuck in his throat, “like when you cut an animal’s throat.” The appellant said he knew A1C Eskew was suffering so he grabbed a pillow and placed it over A1C Eskew’s head. When he removed the pillow, he could still hear the noise so he reapplied the pillow with pressure and put his other hand on A1C Eskew’s neck to strangle him. The appellant also said that he “had that feeling on wanting him dead.” In addition, the trial counsel called the appellant’s friend A1C P to testify. A1C P said he stopped by the appellant’s room on 16 November 2001 and the appellant told him that A1C Eskew was getting on his nerves and he wanted to throw him out the window or overdose him on pills. Then, AFOSI Special Agent Brett Palmer described the condition of A1C Eskew’s room and the body shortly after he received the report of A1C Eskew’s death. Additionally, he testified that the appellant said that he killed A1C Eskew because “Airman Eskew was a f* *k up” and “why keep wasting everybody’s time.” The government’s evidence, coupled with the appellant’s testimony concerning the potential duress defense, convinces this Court of the appellant’s guilt of premeditated murder even after finding his guilty plea to the lesser-included offense improvident. Additionally, we are convinced that the military judge would have made the same finding without the appellant’s testimony during the providence inquiry.
3. Obstruction of Justice
We find the appellant’s guilty plea to obstruction of justice improvident. During the litigated portion of the trial, the appellant said that he “slit” the victim’s wrist because he was trying to cover up his crime by making it look like a suicide and because A1C Caluya told him to cover his tracks. A1C Caluya testified that he never threatened the appellant or told him to cover his tracks. He also denied having a sexual relationship with the appellant. Although the appellant asserted he was afraid of A1C Caluya because he had threatened him, we do not find this testimony credible. Nevertheless, the appellant’s testimony was inconsistent with his guilty plea to obstruction of justice.
The military judge made a specific finding that in this case, the obstruction of justice charge was separate and distinct from the premeditated murder charge. We agree. Despite the overwhelming evidence presented by the prosecution in its case-in-chief, as well as the testimony from the appellant *592 during the defense’s case, we cannot affirm the findings of guilt because the military judge found the appellant guilty of the obstruction of justice charge based on the acceptance of his guilty plea. Unlike the attempted unpremeditated murder charge, the appellant’s conduct that formed the basis of the obstruction of justice charge did not involve a killing. The appellant cut A1C Es-kew’s wrist after he knew A1C Eskew was already dead. Therefore, the appellant raised a potential duress defense that may have been available to him. Accordingly, the military judge was required to reopen the providence inquiry to discuss the potential duress defense raised by the appellant as it related to the obstruction of justice charge. See Hardeman, 59 M.J. at 391; Clark, 28 M.J. at 405. If, after reopening the providence inquiry, the military judge could not reconcile the inconsistencies, then he should have rejected the appellant’s plea to the obstruction of justice offense. See Article 45(a), UCMJ; Jemmings, 1 M.J. at 418. Because the potential defense was not resolved, we find the guilty plea improvident and set aside the findings of guilt to Charge III and its Specification.

Alleged Partiality of the Military Judge

Prior to entering pleas, the defense raised a number of motions before the military judge. At that time, the appellant had elected to be tried by a panel of officer members. In one motion, the defense attacked the voluntariness of the appellant’s written and oral confessions to the AFOSI agents and moved to suppress the statements. The prosecution introduced testimony from the AFOSI polygrapher. Specifically, the polygrapher testified that the appellant was asked whether he poured anything into A1C Eskew’s drinks that night, and whether he knew anything about the cut on the wrist. The appellant denied pouring anything in the drink and said he didn’t know anything about the cut on the wrist. The polygrapher further testified that the results indicated deception on both of those responses. The trial defense counsel did not object to this testimony. The military judge denied the suppression motion. After the rulings on all of the motions, the appellant changed his forum selection to trial by military judge alone. The military judge, on two separate occasions, explained forum rights to the appellant. On both occasions, the appellant indicated he understood them. Furthermore, the appellant’s request to change his forum was reduced to writing. Again, he acknowledged that he understood his rights and had decided to proceed with a trial by military judge alone. Even though the appellant knew the military judge had heard the polygraph testimony, the appellant did not ask to voir dire the military judge or challenge him.
The appellant asserts he was denied due process because his credibility as a witness and his ultimate guilt of premeditated murder was determined by a factfinder who was tainted with knowledge that the appellant had failed a polygraph examination. The appellant posed three specific objections: (1) The military judge allowed trial counsel to elicit the results of the polygraph examination; (2) When the appellant changed his forum election, the military judge failed to ensure the appellant’s request was made with full knowledge and understanding; and (3) After approving the request to be tried by military judge alone, the military judge should have recused himself sua sponte. We will address each objection separately.
1. Polygraph Examination
Concerning receipt of the polygraph evidence, which the appellant asserts was in violation of Mil. R. Evid. 707, it is well settled that there is an exception to the general exclusion of polygraph evidence. Where the accused challenges the voluntariness of his admissions to the investigators, military courts have permitted polygraph evidence. United States v. Gaines, 20 M.J. 668, 669 (A.F.C.M.R.1985). At issue is the impartiality of the military judge who heard the polygraph testimony indicating the appellant’s deception to questions about the death of A1C Eskew. The defense concedes that allowing the trial counsel to elicit specific testimony about the questions asked and the results of the polygraph examination did not significantly prejudice the appellant at that point of the trial because the testimony was *593 provided in an Article 39(a), UCMJ, 10 U.S.C. § 839(a), motion hearing when the appellant’s forum choice was officer members. The appellant also concedes that the military judge was not disqualified from hearing this case if the forum had remained the same—trial by officer members. We agree.
Military “judges are routinely tasked with hearing facts for limited purposes, which they later disregard if consideration would be improper.” United States v. Howard, 50 M.J. 469, 471 (C.A.A.F.1999). Suppression of confessions, consideration of the admissibility of other crimes, wrongs, or acts under Mil. R. Evid. 404(b), and rulings on the admissibility of hearsay are examples of these matters. Id. The polygraph testimony was used solely for the purpose of determining whether the appellant’s confessions were voluntary. Furthermore, the fact that deception was indicated during the polygraph examination could not have been a surprise to the military judge in light of all the conflicting statements the appellant had made to the investigators before and after the polygraph examination. As such, hearing the polygraph evidence did not affect the impartiality of the military judge.
2. Change of Forum Election
Regarding whether the appellant’s request to be tried by judge alone was made with full knowledge and understanding, we hold that it was. See United States v. Turner, 47 M.J. 348, 350 (C.A.A.F.1997); United States v. Barnes, 8 M.J. 115, 117 (C.M.A.1979). The military judge adequately advised the appellant of his forum choices on two separate occasions. In both instances, the appellant indicated he understood his rights. There is no indication in the record that the appellant was confused or did not understand his rights. In fact, in the appellant’s written request to be tried by judge alone, the appellant specifically acknowledged:
After consulting with my defense counsel, I hereby request that the court be composed of the military judge alone. I know that I have already informed the court that I wished to proceed with a panel made up of officer members however, I have changed my mind and want to proceed in a judge alone manner. I make this request with full knowledge of my right to be tried by a court-martial composed of commissioned officers and, if I so request, enlisted personnel.
We find the appellant made his forum election with full knowledge and understanding. See Rule for Courts-Martial (R.C.M.) 903(a)(2) and its Discussion.
3. Recusal of Military Judge
Finally, the appellant asserts the military judge should have sua sponte recused himself after he made his request to be tried by military judge alone. A military judge’s decision whether to recuse himself is reviewed for abuse of discretion. United States v. Jones, 55 M.J. 317, 320 (C.A.A.F.2001) (citing United States v. Lynn, 54 M.J. 202, 205 (C.A.A.F.2000)). If the appellant does not raise the issue of disqualification until appeal, we examine the claim under a plain error standard of review. Jones, 55 M.J. at 320 (citing United States v. Schreiber, 599 F.2d 534, 536 (3d Cir.1979)). To establish plain error, the appellant must show there was error, the error was plain or obvious, and the error materially prejudiced a substantial right. United States v. Pfister, 53 M.J. 158, 160 (C.A.A.F.2000) (citing United States v. Powell, 49 M.J. 460, 464 (C.A.A.F.1998)).
R.C.M. 902(a) provides “a military judge shall disqualify himself or herself in any proceeding in which that military judge’s impartiality might reasonably be questioned.” Whether a judge’s impartiality might reasonably be questioned is an objective test. United States v. Robbins, 48 M.J. 745, 754 (A.F.Ct.Crim.App.1998) (citing United States v. Kincheloe, 14 M.J. 40, 50 (C.M.A.1982)). ‘Would a reasonable person, with knowledge of all of the applicable facts, have a reasonable doubt regarding the military judge’s impartiality?” Id. at 754 (citing Kincheloe, 14 M.J. at 50). Finally, “a military judge has an equally weighty responsibility not to re-cuse himself or herself unnecessarily.” Id. (citing Kincheloe, 14 M.J. at 50 n. 14).
*594 The military judge was not required to sua sponte recuse himself from this case. In fact, he was not required to recuse himself even if he had rejected the appellant’s proffered guilty pleas. See United States v. Winter; 35 M.J. 93, 96 (C.M.A.1992). See also United States v. Dodge, 59 M.J. 821, 826 (A.F.Ct.Crim.App.2004), aff'd, 61 M.J. 288 (C.A.A.F.2005). After reviewing the record of trial we are convinced that a reasonable person would not have questioned this military judge’s impartiality. The judge’s questions were conscientious and consistent with that of a trier of fact who had not yet decided the facts in the case. For example, when the appellant testified in the findings portion of the case, the military judge asked him to address specific allegations surrounding the death of A1C Eskew. He asked why the appellant would admit that he used a pillow to smother the victim if he had not done so, whether the victim bled after the appellant cut him, and about the lighting in the dormitory room that night. He specifically asked the appellant whether he had put Yisine into A1C E skew’s drink. Additionally, the military judge questioned A1C Caluya’s whereabouts on the night of the murder, and about many of his actions on the day he discovered A1C Eskew’s body. Furthermore, after argument by counsel, the military judge asked the government to recall the medical examiner to address concerns he had with the autopsy report.
In spite of all the unfavorable evidence the military judge heard during the motions, to include the polygraph evidence, as well as inconsistent statements by the appellant, we find the military judge maintained his impartiality throughout the trial and that a reasonable person with knowledge of all of the applicable facts would not have a reasonable doubt regarding this military judge’s impartiality. Accordingly, he was not required to recuse himself. See Robbins, 48 M.J. at 754.

Post-Trial Processing Error

We now turn to the post-trial processing issue. After the record of trial was transcribed, the SJAR and record of trial were served on the appellant and his trial defense counsel. In the SJAR, the acting SJA provided erroneous advice to the convening authority. Specifically, the SJA incorrectly advised the convening authority that he could not approve any period of confinement less than “confinement for life” unless he reduced the finding of guilty to the charge of premeditated murder to a lesser-included offense or set aside the finding of guilty and dismissed it. The trial defense counsel did not explicitly object to the erroneous advice. Instead, the defense counsel correctly advised the convening authority in their submission of matters that:
After considering all the evidence surrounding this case, the defense on behalf of [the appellant] requests that you exercise your command prerogative, to change the finding of guilty to premeditated murder to that of guilty to the charge of unpremeditated murder. The defense additionally requests that you disapprove the sentence of confinement for life and re-sentence [the appellant] to sixty years of confinement. As the convening authority you have the authority to grant one or both of these requests pursuant to Article 60, UCMJ[ 10 U.S.C. § 860] and RCM1107.
(Emphasis added.) In the SJAR’s addendum, which was not served on the defense, the SJA repeated the erroneous advice given previously.
The SJA did not provide the convening authority with accurate legal advice. A conviction for premeditated murder subjects an accused to a sentence of imprisonment for life. United States v. Jefferson, 21 C.M.R. 319, 320, 1956 WL 4585 (C.M.A.1956). However, “when a court has adjudged a mandatory sentence to imprisonment for life ... the convening authority may approve any sentence included in that adjudged by the court.” Id. (emphasis added) (quoting Manual for Courts-Martial, United States, ¶880 (1951 ed.)). Furthermore, R.C.M. 1107(d)(2) states “[w]hen the court-martial has adjudged a mandatory punishment, the convening authority may nevertheless approve a lesser sentence.” Here, contrary to the advice in the SJAR, the convening authority did not have to disturb the premeditated murder conviction in order to reduce the sentence adjudged, if he so desired.
*595 Although the trial defense counsel iterated the correct alternatives available to the convening authority, because she did not specifically object to the SJA’s advice concerning the convening authority’s options on approving the sentence, we review the appellant’s claim for plain error. R.C.M. 1106(f)(6) provides that defense counsel’s failure to comment on any matter in the SJAR waives a later claim of error “in the absence of plain error.” “We review application of the plain error doctrine de novo, as a question of law____Because of the highly discretionary nature of the convening authority’s action on the sentence, we will grant relief if an appellant presents ‘some colorable showing of possible prejudice.’ ” United States v. Kho, 54 M.J. 63, 65 (C.A.A.F.2000) (quoting United States v. Wheelus, 49 M.J. 283, 289 (C.A.A.F.1998)).
We first review for obvious error. . It is critical that the convening authority, the only person who is empowered to grant clemency during post-trial processing, receive accurate legal advice upon which to make decisions about clemency. It was an obvious error for the SJA to incorrectly advise the convening authority concerning the breadth of his authority to grant clemency in this premeditated murder case.
We next test for prejudice. To prevail, the appellant must show what he would do to resolve the error if given such an opportunity. Wheelus, 49 M.J. at 288. In the appellant’s declaration, he asserts he would have asked the convening authority to reduce his sentence even if he felt the premeditated murder conviction should not be disturbed. Aso, the appellant would have asked his defense counsel to ensure that the convening authority was well aware of the extent of his clemency powers. We find the appellant has made a colorable showing of possible prejudice. See Kho, 54 M.J. at 65. Accordingly, we find plain error and the appellant is entitled to new post-trial processing.

Conclusion

We set aside Charge III and its Specification and the sentence. Because we are returning the case for post-trial processing consistent with this opinion, we need not address the other post-trial processing matter or the sentence appropriateness issue.[5]
Accordingly, we return the record of trial to The Judge Advocate General for remand to the convening authority. The convening authority may order a rehearing on Charge III and its Specification and the sentence. If a rehearing on Charge III is not practical, the convening authority may dismiss Charge III and its Specification and reassess the sentence, or order a sentence rehearing for the remaining charges and specifications. Thereafter, Article 66, UCMJ, shall apply.

. Excepting out the words, "a bible.”

. Oral argument was heard on Issues (2) and (4) at Bolling Air Force Base, District of Columbia.

. This issue was raised pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982).

. This airman then left the room after helping put A1C Eskew to bed.

. We further note that the promulgating order states the sentence as "confinement for life” but does not state "with the possibility of parole” as adjudged.